IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| PAUL PERKINS, Individually and on Behalf of a class of all persons Similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN NATIONAL INSURANCE )<br>COMPANY, a Foreign corporation, )<br>)<br>Defendant. )<br>) | Civil Action File<br>No. 3:05-CV-100 (CDL) |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

Plaintiff Paul Perkins seeks nationwide class certification pursuant to Federal Rule of

Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a class of persons similarly

situated. For the reasons discussed herein, the Court should certify the following (b)(2) class on

Plaintiff's breach of contract claim:

All owners and former owners of American National credit insurance policies.[1]

Plaintiff also asks the Court to certify the following (b)(3) class:

All former owners of an American National credit insurance policy whose insured
debt was paid off before the scheduled expiration date of coverage but who have

---

[1] Excluded from the class are all (1) owners who timely and properly request exclusion from
the class; (2) owners who are present or former officers and directors of American National;
(3) owners whose policies were rescinded by mutual consent of the parties; (4) owners whose
insured loans terminated outside the applicable limitations periods; and (5) owners whose
insurance policies have expired without early termination.  Plaintiff asks the Court to declare
that, with respect to the above-defined class, Defendant must provide each class member with a
refund of unearned premiums (if such amount exceeds the statutory minimum) *if* any insured
debt was paid off before the scheduled expiration date of coverage and within the applicable
limitations periods, *or if* any insured debt is paid off in the future prior to the scheduled
expiration date of coverage.

not received a refund of unearned premiums.[2]

Both proposed classes meet all the requirements for certification.  Certification is particularly appropriate in this case because the overarching issue presented by Plaintiff's claim defines the contractual rights of all current and former owners of Defendant's credit insurance policies.

## I.    **INTRODUCTION**

Defendant American National Insurance Company ("ANICO") sells credit life and credit disability insurance covering loans made for the purchase of automobiles.  Credit life insurance pays the underlying auto loan if the policyholder dies; credit disability insurance pays the auto loan monthly payments if the consumer becomes disabled.  Rather than collect monthly premiums over the course of the loan for this insurance, Defendant charges the entire policy premium at the initiation of the underlying loan.  This "single premium" is then financed into the underlying auto loans, and Defendant "earns" the premium incrementally over the duration of the loan.  If an insured does not pay off the underlying loan prior to the conclusion of its term, Defendant will have "earned" the entire premium.  However, if the loan terminates early, meaning prior to the expiration of the policy's term (which mirrors the loan's maturity date), the insurance coverage ceases, there is no longer any loan to insure, and Defendant can no longer "earn" the entire premium it collected when the loan was originated.

Under the terms of Defendant's own insurance policies, which are form contracts containing practically identical language, ANICO is required to return to its policyholders any

---

[2] Excluded from the class are all (1) owners who timely and properly request exclusion from the class; (2) owners who are present or former officers and directors of American National; (3) owners whose policies were rescinded by mutual consent of the parties; (4) owners whose insured loan terminated outside the applicable limitations periods; and (5) owners whose insurance policies have expired without early termination.

"unearned premiums" if the underlying debt "terminates" before the expiration date of the insurance. The scheduled expiration date is when coverage is set to expire – typically when the consumer is scheduled to finish making payments on the underlying loan. For example, credit insurance on a 48 month loan typically expires 48 months after the purchase of the vehicle. But if the underlying loan is paid off early, then the debt "ends," and the insured is entitled to receive a refund of part of the pre-paid premium. Such a requirement makes sense. If the debt stops before the term of the insurance expires, then the customer paid for coverage that he or she never received, and the insurer is holding premiums it can never earn and to which the insurer can never have any claim to retain. This explains why this money is commonly referred to as "unearned premiums," and ANICO's own insurance policies require it to refund these unearned premiums. ANICO has never claimed that it had any right to keep unearned premiums when coverage has terminated due to early payoff of the insured loan. Indeed, ANICO could not so contend.

Plaintiff purchased ANICO credit insurance when he took out an auto loan, and paid off the subject auto loan before the loan fully matured. This marked the "end" of the insurance, and any risk that ANICO would ever have to pay a claim disappeared as of that moment. ANICO did not, however, refund Plaintiff the unearned premium due to him under the terms of ANICO's own insurance policy. Instead, ANICO retained Plaintiff's unearned premium, as well as the unearned premiums of numerous other similarly situated insureds.

As demonstrated through ANICO's own records and admissions, the findings of the Texas Attorney General and the proven history of several class action defendants significantly similar to ANICO, thousands of former ANICO insureds will be entitled to a refund of unearned premiums if the Court certifies a class and declares that the class members have a

right to a refund of unearned premium if an insured loan is paid off early.

The common issue in this case is whether ANICO's policyholders have a contractual right to unearned premiums if their respective loans are paid off early.  Every one of ANICO's insurance policies expressly provides this right, and determining whether an individual insured is indeed owed a refund of unearned premium, and calculating the amount of such a refund, is easily ascertained given the information that ANICO and its dealer-agents already maintain in their collective files.[3]

## II.   FACTUAL BACKGROUND

### A.   Other identical pending actions

Although Plaintiff Perkins' action against ANICO is the first-filed federal court action, there have been two other identical putative class actions filed against ANICO: one before Plaintiff Perkins' case and one after.  *Gross v. ANICO*, SU-05-CV-569-6, was filed on February 17, 2005 in the Muscogee County Superior Court.  Discovery was exchanged in that case, and discovery in the *Gross* case was later combined with the discovery and due diligence conducted in the instant case by agreement of all parties.  As the Court is well aware, discovery was still being conducted jointly in the *Gross* and *Perkins* cases in July 2006, when this Court, Messrs. Gross and Perkins and their counsel became aware of the *Boren* action pending in Western District of the United States District Court of Texas.

---

[3] Only one additional piece of information, the date when the insured loan was paid off (Loan Termination Date or "LTD"), is needed to determine whether an insured is entitled to a refund of unearned premium, and to calculate the amount of unearned premium due using simple, uniform mathematical formulas (meaning that no individual hearings would be required).  The simple fact is that the LTDs, if not already contained in the files of ANICO or it's dealer-agents, can readily be obtained from lenders either by ANICO or, if the Court denies Plaintiff's "Plaintiff's Motion for Order Governing the Production of Evidence" filed contemporaneously herewith, by Class Counsel pursuant to Court Order and, where necessary, use of subpoenas.  This process is further explained in Plaintiff's Motion for Court Order Governing the Production of Evidence [Pacer Doc. No 80] and Brief in Support Thereof [Pacer Doc. No. 81].

*Boren v. ANICO*, A06CA294 LY, was filed April 21, 2006.  Informal discovery was purportedly conducted in that case as well, and a 30(b)(6) deposition of ANICO's corporate representative was taken by counsel for plaintiff Boren.  (*See* Exh. 1, Depo. of James Pangburn).

On July 10, 2006, the Georgia Court of Appeals issued its decision in *JMIC v. Toole,* 280 Ga. App. 372, 376 (2006), affirming the grant of class certification and denial of that credit insurer's motion for summary judgment in a virtually identical case, a decision dispositive of many issues in this case.  The Georgia Supreme Court denied *certiorarai* on October 30, 2006.

*Three days after* the Court of Appeals decision in *JMIC v. Toole,*  on July 13, 2006, the Texas Attorney General filed a case styled *State of Texas v. ANICO*, which alleged state statutory violations concerning ANICO's failure to refund unearned premiums.  *See* Tex. A.G.'s Amicus Curiae Brf. [Pacer Doc. No. 59] at 9 & Exh. 3; *see also* Aff. of Kim McCallister [Pacer Doc. No. 60].[4]  As part of that litigation, the Texas Attorney General has

---

[4] The Texas AG's lawsuit against ANICO is not brought as a class action on behalf of individual policyholders or certificate holders of ANICO's credit life or credit disability insurance.  In *State of Texas v. ANICO*, the State, through its Attorney General, has sued ANICO for violations of the Texas Deceptive Trade Practices Act and for violations of the Texas Insurance Code.  The State's complaint seeks injunctive relief to restrain ANICO's purported unlawful practices against Texas policyholders in violation of the DTPA and Texas Insurance Code, as well as civil penalties in favor of Texas for ANICO's purported violations of the DTPA and the Administrative Code.  The Attorney General has not named a class representative.  The Texas Court of Appeals has held that the Texas Attorney General cannot bring a *parens patriae* lawsuit under Article 21.21 of the Texas Insurance Code; rather, a class action suit brought by the Attorney General must be treated the same as a class action brought by a member of the insurance-buying public.  *Lubin v. Farmers Group, Inc.*, 157 S.W.3d 113, 122-24 (Tex. App. 2005), petition for review granted, 2006 Tex. Lexis 1075 (Tex. Oct. 27, 2006).  The Court noted that without a class representative, the State conceded that it could not meet the typicality and adequacy of representation class action requirements, unless the State has suffered an injury similar to those suffered by the class members and could serve as class representative itself.  *Id*. at 124, 127.  Therefore, while the Attorney General may be authorized to litigate the State's claims for injunctive relief and civil penalties based on statutory code violations, it did not bring the case as a class action on behalf of Texas insureds individually

requested and received documents from ANICO and the lenders for some of ANICO's

insureds.  From those documents, the Attorney General has determined that at least some

17,000 of ANICO's Texas insureds are currently owed a refund of unearned premiums due to

the underlying loan's early termination.[5]  (*See id.*).

B.      **ANICO Credit Insurance and Unearned Premiums**

ANICO charges its customers a single upfront premium for credit life and credit

disability insurance on automobile loans, which is typically added into the loan obtained to

purchase the automobile.  (*See* Exh. 1, Pangburn Depo. at 21/22-22/5; *see also* Exh. 2, Retail

Installment Contract; *see* Exh. 3,  ANICO Cert. Acct. No. X0140479 ("Perkins Policy") at 1).

This single premium purchased coverage lasts no longer than the term of the loan, as the

expiration date of the policy tracks the term of the loan.  (*See e.g.,* Exh. 3, Perkins Policy at 1;

*see also* Exh. 2, Retail Installment Contract).

Consumers pay off auto loans before the loan's maturity date for a variety of reasons.

For example, the consumer may trade in the car, refinance the debt, or the car may be totaled

(and paid off by insurance).  If one of these things happens, then the credit life or disability

insurance that the consumer paid for up front is no longer in force, and ANICO is required,

under the terms of all ANICO credit insurance policies, to refund any unearned premiums

unless there is an open claim on that policy, which can easily be determined.[6]  (*See* Exh. 1,

---

for the recovery of their individual damages claims against ANICO, because it was not
authorized to do so under the current state of the law.
[5] Class Counsel believe there are many more ANICO insureds in the State of Texas who are
due refunds, and will endeavor, with this Court's permission, to obtain refunds *for all of them*,
rather than just for that limited sampling of insureds whose information has been obtained by
the Texas Attorney General.
[6] Because the terms of all ANICO's credit insurance policies provide that ANICO will refund
unearned premiums upon the early termination of an insured loan, ANICO necessarily must
monitor its insureds loans to find out when early termination occurs; otherwise ANICO cannot

Pangburn Depo. at 22/17-25/17; 29/14-24; *see also* Exh. 3,  Perkins Policy at 3; *see also* Exh. 4, ANICO Form Contracts Refund Provisions Appendix; *see also* Exh. 5, ANICO Form Contracts Appendix- Termination of Coverage).[7]

The precise amount to be refunded if the loan terminates early is calculated using the formulas applicable depending on state law in the state where the policy was issued.  (*See, e.g.,* Exh. 3, Perkins Policy at 3; *see also* Exh.1, Pangburn Depo. at 27/18-22, 29/25-30/5, 38/20-24).  These standard, uniform, mathematical formulas are used to calculate the amount of refund due each and every person owed a refund under ANICO credit insurance policies.

### C.      Specific Provisions in the Perkins Policy

When Plaintiff purchased an automobile on September 4, 2001, he bought ANICO credit life and disability insurance for a single premium of $862.40.  (*See* Exh. 3, Perkins Policy at 1).  This single premium was financed with Plaintiff's auto loan.  Both Plaintiff's credit insurance and his auto loan were scheduled to mature, or expire, after a term of 66 months.  (*See* Exh. 3, Perkins Policy at 1; *see also* Exh. 2, Retail Installment Contract). Specifically, Plaintiff's policy explains the terms of the insurance policy's coverage and refunds as follows:  "This insurance stops on the Expiry Date or when your loan is paid off . . . ."  (*See* Exh. 3, Perkins Policy at 3).  Plaintiff's loan was paid off on November 17, 2003.  (*See*

---

possibly fulfill its contractual promise. Although loan monitoring would impose some requirements upon a credit insurer, it is the price credit insurers like ANICO should be required to pay to collect and profit from upfront premiums for such credit insurance products.  Of course, credit insurers who do not want to be burdened with such obligations are free to sell "monthly outstanding balance" credit insurance products instead of "single premium" products. (*See generally* Exh. 6, O'Brien, E. and Roddy, J., "*Unrefunded Credit Insurance Premiums: A Multi-million Dollar Constructive Trust*," Consumer Finance Services Litigation (Practicing Law Institute, April 2000, at 3 n.4).

[7] Plaintiff has compiled the pertinent provisions of ANICO's form contracts into appendices for the Court's convenience.  *See* Fed. R. Evid. 1006.

Exh. 7, Affidavit of Paul Perkins at 6).  Since the loan was paid off before the scheduled

expiration date, ANICO therefore became obligated to refund unearned premiums.

The Perkins Policy is substantially similar to all other ANICO single premium credit

insurance policies in that all ANICO's policies establish that every person insured under its

single premium credit insurance policies is entitled to a refund of unearned premiums if the

loan is paid off before the scheduled expiration date of coverage.  (*See* Exh. 1, Pangburn Depo.

at 25/4-17; *see also* ANICO Form Contracts Appendix-- Refund Provisions and Termination of

Coverage; *see also* Exh. 3, Perkins Policy at 3).  As it relates to the single determinative issue

in this case, the Perkins policy is therefore substantively identical to every other ANICO credit

insurance policy.[8]  (*See id.*).

### D.      Plaintiff's Plan For Identifying Class Members Who Are Owed Refunds

As is fully set forth in Plaintiff's Motion for Court Order Governing the Production of

Evidence [Pacer Doc. No. 80] and Brief in Support Thereof [Pacer Doc. No. 81], all that is

required to determine which insureds are class members due refunds *and* to calculate the

amounts by computer are seven "data points":

(1)      Insured's Name;

(2)      Policy Start Date;

(3)      Policy Expiration Date;

(4)      Premium Paid;

---

[8] Some of ANICO's credit insurance policies now contain notice provisions that purport to require an insured to notify ANICO of an insured loan's prepayment as a condition of receiving a refund of unearned premium.  (*See* Exh. 8, ANICO Form Contract Appendix - Notice Requirement).  For the reasons explained in pages 22-25 of this brief, *infra.*, these notice provisions do not create a pre-suit notice requirement, defeat the commonality of the class's claims, or destroy the typicality of Plaintiff's policy to the other class members' policies.

(5)     State Issued;

(6)     Certificate Number; and

(7)     Loan Termination Date ("LTD"). [9]

If the Loan Termination Date precedes the Policy Expiration Date, then there was an early termination of the loan and an unearned premium is due unless the insured is otherwise excluded from the class definition.  A simple comparison of the Policy Start Date, the Policy Expiration Date, the Loan Termination Date, and the Premium Paid and application of appropriate state law governing calculation of unearned premium refunds yields the amount due.  Defendant admits that it already has, in its own files and records, six of the seven data points necessary to identify all of unearned premiums owed to putative class members.  Those six data points are on Defendant's insurance "schedule" signed by each insured at the contract's origination.[10]  *See*  Pls.' Mot. Order Governing Prod. Evid. [Pacer Doc. No. 90] at 7.

For the reasons stated in Plaintiff's Motion for Order Governing the Production of Evidence and Brief in Support Thereof, Defendant can readily obtain the LTDs needed to

---

[9] The Court and Interim Class Counsel will also ultimately need the (1) insured's most current address, (2) social security number, (3) date of birth, (4) the name and address of the Lender (Creditor) as shown on Defendant's certificate of insurance or within the files maintained by Defendant or its dealer/agents, (5) the amount of unearned premium refund due each insured (if any), and (6) a VIN number (in the event the same insured purchased multiple policies from Defendant on multiple vehicles).  Those six points are necessary to ensure the accuracy of Defendant's data and ensure that the best possible addresses can be obtained for each insured due a refund, to maximize the chance that every insured due a refund actually gets it (Class Counsel contemplate using a 'batch update' service to obtain the best possible addresses for insureds found to be due refunds).  It is most efficient for Defendant to gather all of this information at the same time it is gathering the loan termination dates since it will already be communicating with the its agents and lenders about large numbers of insureds.

[10] The only one of the seven data points which Defendant may not have in its own computer records or other files is the Loan Termination Date.  That data point obviously *should be* in Defendant's computers, since it was Defendant which obligated itself to and promised to refund (and thus monitor for the need to refund) unearned premiums in the contract Defendant itself drafted.

assess which of ANICO's insureds are owed unearned premium refunds and, if so, the amount

of such refunds, if not from its own or its dealer/agents' files, then from lenders.

Alternatively, should this Court deny the referenced Motion filed by Plaintiff, those loan

termination dates can be obtained by Class Counsel, using a Court Order and, where necessary,

subpoenas.[11]

      With the Loan Termination Date entered in Defendant's database, which already

contains the other six points of data enumerated above, the Comprehensive List of Prospective

Class Members is formed.  Which of Defendant's insureds are due refunds is readily

determined – it is the group of insureds whose loans are no longer active and whose Loan

Termination Dates preceded their Policy Expiration Dates.  Such insureds should then

constitute the list of Class Members.

      The above approach, as further discussed in Plaintiff's Motion for Order Governing the

Production of Evidence, has been used by both the Texas Attorney General and in other

matters relating to unearned premium class actions.[12]  *See* Tex. A.G. Amicus Brf. [Pacer Doc.

---

[11] Plaintiff's evidence shows what common sense suggests -- that Defendant has an open line of communication with lenders, who are loss payees on ANICO's insurance policies; and that Defendant has every right and reason to seek and obtain those loan termination dates from lenders, because that date informs Defendant (a) whether it is still at risk for a death or disability claim on Defendant's policy of insurance and (b) whether it is obligated to return unearned premiums.  This contention is addressed in Plaintiff's Motion for Order Governing the Production of Evidence and Brief in Support Thereof.  Regardless of who seeks the LTDs, however, it is clear that either party is entitled to this information for purposes of this litigation.

[12] The Texas Attorney General has filed an amicus curiae brief in this Court, asking that the Court to allow the Texas Attorney General's office to conclude its litigation against ANICO separate and apart from the instant action.  For the reasons stated in Plaintiff Perkin's Motion for Injunctive Relief [Pacer Doc. 66], Plaintiff opposes such action and maintains that he should be allowed to pursue his claim for damages arising from ANICO's breach of contract on behalf of the Texas class members.  For the reasons stated in Plaintiff's "Objection to The State of Texas's Supplemental Amicus Curiae," [Pacer doc. No. 75], the Texas Attorney General is not entitled to even seek such relief unless and until it has filed a motion to intervene in this case and that motion has been granted.

59] at 20; *see also* Brf. re Mot. Order. Gov. Prod. Evid. [Pacer Doc. No. 81] at 16-17 and Exhs. 19 & 20.]  There is therefore no reason to doubt the efficacy of this method in the case *sub judice*.

## III.   <u>CLASS CERTIFICATION</u>

Class actions advance "efficiency and economy of litigation which is a principal purpose of the procedure."  *General Tel. Co. v. Falcon*, 457 U.S. 147, 148 (1982) (citation omitted).  A class action is very efficient and practical for addressing the breach of form contracts for people throughout the country.  An essential function of a class action is to protect consumers who have small claims that otherwise might be left unremedied:  "[A] class action serves not only the convenience of the parties but also prompt, efficient judicial administration. ...  The class action is one of the few legal remedies ... against those who command the status quo."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 185 (1974) (Douglas, J., concurring and dissenting in part)).

In this case involving a controlling legal issue common to each and every class member, Federal Rule of Civil Procedure 23 is satisfied.  Thousands of ANICO insureds with substantively identical form contracts should not be forced to bring thousands of small claims seeking the same relief separately in courts across the country, especially when the realistic result of such a requirement would be to effectively deny those persons any relief at all.

### A.   <u>Class Definition</u>

Plaintiff seeks certification of a (b)(2) class, as defined above, which Class would be entitled to a declaration that if an insured debt is paid off before the scheduled expiration date of the single premium credit insurance coverage, then ANICO is obligated to promptly refund

the unearned premium to the insured, as well as an order requiring ANICO to reasonably fulfill its contractual obligations to its insureds.  *See* Comp. at ¶¶ 21, 32.

Plaintiff also seeks certification of a (b)(3) class, defined above, whose members would be entitled to actual damages in the amounts of the unearned premiums owed to them as of the times they paid off their loans early, together with statutory interest running from their loan payoff dates until the dates on which they receive the unearned premiums that have been wrongfully retained.  *See* Comp. at ¶ 33.

## B. Several Courts Have Already Certified Classes in Identical Class Actions

All courts confronted with a request for class certification of an unearned premium class action, such as the instant case, have favorably decided issues regarding the proposed putative classes, with no reversals on appeal.  (*See, e.g.,* Exh. 9, *Toole v. J.M.I.C. Life Ins. Co*., SU2003CV246 (Muscogee County, Ga, August 11, 2005), *aff'd J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 376 (2006), *cert. denied* October 30, 2006 (nationwide class); Exh. 10, *Pierce v. Universal Underwriters Life Ins. Co.*, SU2003CV377 (Muscogee County, Ga, March 5, 2007) (nationwide class); Exh. 11, *Reller v. Union Sec. Life Ins. Co.*, No. C3-04-12202 (Ramsey County, MN, February 28, 2007) (nationwide class); Exh. 12, *Ballard v. Central States Health & Life Ins. Co. of Omaha*, No. 98-8856 (Hennepin County, MN, August 13, 1999) (nationwide class); Exh. 13, *Gibson v. Universal Underwriters Life Ins. Co.*, No. 04-C-414 (Hills. County, NH, Oct. 29, 2004) (statewide class); Exh. 14; *Lee v. Life Investors Insurance Company of America,* No. 03-15180 (Hennepin County, MN, April 27, 2005) (nationwide class)**.** *See also Coley v. Guarantee Trust Life Ins. Co.*, No. 99 L 006680 (Cook County, IL Circuit Court, October 2, 2000) (statewide class); *Jordan v. W. Diversified Life Ins. Co.*, No. 96-016337 (Hennepin County, MN, August 8, 2000) (nationwide class); *Sousa v.*

*North Central Life Ins. Co.*, No. 62-CV-96-5061 (Ramsey County, MN, June 29, 1999)

(nationwide class); *Amoche v. Guarantee Trust Life Ins. Co.*, No. 04-C-674 (Hills. County, NH

Superior Court, No. Dist., March 24, 2005) (statewide class); *Dunn v. American Heritage Life*

*Ins. Co.*, No. 05-C-0012 (Hills. County, NH Superior Court, No. Dist.) (statewide class).

## C.   <u>Standard for Class Certification under Federal Rule 23(a)</u>

"[W]hile a court should not determine the merits of a claim at the class certification

stage, it is appropriate to 'consider the merits of the case to the degree necessary to determine

whether the requirements of Rule 23 will be satisfied.'*"  Heffner v. Blue Cross and Blue Shield*

*of Alabama, Inc.,* 443 F.3d 1330, 1337 (11th Cir. 2006) (quoting *Valley Drug Co. v. Geneva*

*Pharm., Inc.,* 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003)).  "Determination of the question

whether a lawsuit may proceed as a class action is committed to the sound discretion of the

district court, and its determination will not be overturned absent a showing that it has abused

its discretion."  *In re Dennis Greenman Securities Litigation,* 829 F.2d 1539, 1543-44 (11th Cir.

1987).

The general requirements under Federal Rule 23(a) are the following:

1.     The class must be so *numerous* that joinder of all members is
       impracticable;

2.     There must be questions of law or fact *common* to the class;

3.     The claims or defenses of the representative parties must be *typical* of
       the claims or defenses of the class; and

4.     The *representative* parties must fairly and adequately protect the
       interests of the class.

In addition to the requirements of Federal Rule 23(a), the proposed class must satisfy at least

one section of Federal Rule 23(b).  Plaintiff seeks the certification of a (b)(2) class and a

declaration of the rights of the current and former owners of ANICO credit insurance.  Plaintiff also asks that the Court consider whether certification is proper under Rule 23(b)(3).

### 1.    Federal Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  The focus of the numerosity requirement is judicial economy.  The rule does not set out a precise numerical standard.  Instead, it presents "an impracticability of joinder requirement, of which class size is an inherent consideration. ..."  1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 3:3, at 218 (4th ed. 2002).

"Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion."  *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).   In *Kilgo*, the Eleventh Circuit agreed that numerosity had been satisfied when the plaintiffs identified thirty-one individual class members and the class was geographically diverse and could not be readily identified.  *Id.  See also* 1 Newberg § 3:5, at 247 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

In this case, the proposed class plainly meets the numerosity requirement, as ANICO's own corporate representative has admitted that there are thousands of ANICO insureds who are currently owed unearned premium refunds due to early loan renewals or refinancings alone. (*See* Exh. 1, Pangburn Depo. at 31/4-32/3).  Moreover, ANICO sells policies in forty-nine

states and the District of Columbia; the class members for this action are therefore widely dispersed.  (*See* Exh. 15, Def.'s Resp. Pl.'s Gross's 2nd Rogs No. 6).

If ANICO's own concession is not enough to establish numerosity in this case, the Court may also consider the Texas Attorney General's identification of some 17,000 insureds to whom ANICO owes a refund of unearned premium in Texas alone, and just for the years 2002 through 2005.[13]  That finding alone establishes the impractability of joining the putative class members.  *See* Aff. of Kim McCallister [Pacer Doc No. 60] at Exhs. A & B.

If the Texas Attorney General's findings of at least 17,000 documented insureds due refunds, coupled with ANICO's own admissions, are not persuasive indicia that the proposed class is too numerous to be practicably joined, ANICO's internal statistics regarding its refund rate also reasonably suggest that there are numerous insureds who are still owed a refund of unearned premium.  ANICO's own records show it knew that 28.45% of the policies it issued through automobile dealerships from 1995 through 1999 were terminated before the insured loan's scheduled maturity date.  (*See* Exh. 15, Def.'s Resp. to Plf. Gross's 2nd Rogs at No. 7). Surveys and studies of prepayment trends for automobile loans, however, indicate that the actual rate of prepayment for these loans ranges between 60 to 65%.  (*See* Exh. 16, 1993 Consumer Bankers Association Report at A.7, Table A.23; *see also* Exh. 17, 2004 Non-Prime Automotive Financing Survey at 9-11).  The reasonable inference, therefore, is that ANICO still owes refunds of unearned premium to approximately 30% of those persons who bought insurance during the years 1995 through 1999.  The discrepancy between ANICO's internal

---

[13] Class Counsel do not believe the work of the Texas Attorney General's staff has identified all the Texas insureds due refunds, even for that limited time period, based on the number of policies issued by ANICO and ANICO's statements about what percentage of their business in Texas.  Why, precisely, more Texas insureds due refunds were not identified is unknown at present, and answers to questions such as that have not been forthcoming.

statistics and the national average of car loan prepayments is telling.  ANICO issued 487,349 certificates of credit life and/or disability insurance nationwide in 1999 alone.  (*See* Exh. 15, Def.'s Resp. to Plf. Gross's 2nd Rogs at Nos. 1, 3).   That would appear to mean that approximately 146,000 of those people who bought ANICO credit insurance just in that one year 1999 are due unearned premium refunds due to early termination.[14]

The progression of other substantially similar class actions against insurers similar to ANICO also supports the conclusion that ANICO owes a refund of unearned premium to a group of persons who cannot be practicably joined in one action.  There is no basis to conclude that ANICO is any different from other credit insurers as to whom courts have held the numerosity requirement has been met, even in single-state class actions.  ANICO, like other such insurers, has admitted it issues refunds only when a direct request is made.

### 2.    Federal Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."

> Under the commonality requirement, a class action must involve issues that are susceptible to class-wide proof.  Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative class members do not defeat certification.  Nevertheless, the named plaintiffs' claims must still share the same essential characteristics as the claims of the class at large.

*Cooper v. Southern Co.,* 390 F.3d 695, 714 (11th Cir. 2004) (internal citations and quotations omitted) (alterations in original).

Class relief is therefore particularly appropriate when the issues are common to the class and turn on questions of law applicable in the same manner to each class member.  Where

---

[14] There is no reason to believe a lesser percentage of those who bought ANICO credit insurance in other years are due refunds, as there is no evidence ANICO changed its business scheme or sought to start monitoring early terminations so it could do what it had contractually promised to do – pay refunds upon early termination of the insured loan.

the members of the proposed class have contracts with the same language, the contracts themselves can supply the common factual basis needed to satisfy this element of Rule 23.  As the First Circuit recently put it, "The common factual basis is found in the terms of the contract, which are identical for all class members."  *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 39 (1st Cir. 2003) (reversing trial court's denial of certification).  Thus, the common issue for every person identified by Plaintiff's analysis is whether ANICO is required to refund unearned premiums upon early payoff.

The members of the proposed class all received practically identical policy forms purporting to require ANICO to refund unearned premiums if the insured loan is paid off before coverage expires.  As the Court can determine, and ANICO has conceded, these policies are substantively identical in their material terms for each class member.  (*See* Exh. 1, Pangburn Depo. at 20/22-23/25; 25/4-17; 26/7-23; *see also* Exh. 4, ANICO Form Contracts Appendix- Refund Provisions and Termination of Coverage).  As Plaintiff's claim is identical to the claim of the other class members with respect to these issues, the commonality requirement is well satisfied.  In sum, if Plaintiff proves his claim, he has proved a claim for every person who paid off his or her loan early and did not receive a refund.

       a.      **Courts routinely certify multi-state contract classes.**

Plaintiff anticipates that ANICO will argue that multi-state certification is improper. Other Courts have rejected that argument.  *See* pp. 12-13*, supra.*  Including absent class members from other states has a limited impact on the commonality analysis because this is a *contract* class action, and the contracts here are very simple.

The United States Supreme Court has recognized that "contract law is not at its core diverse, nonuniform and confusing."  *American Airlines v. Wolens,* 513 U.S. 219, 233 n.8

(1995) (internal quotations omitted); see also *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.").  The United States Supreme Court denied certiorari in a case where a state court certified a nationwide breach of contract class involving insurance policies concluding "that law of breach of contract is uniform enough that our traditional notions of fair play and justice would not be offended by litigating the issue under [one state's] law."  *Enfield v. Old Line Life Ins. Co. of America,* 98 P.3d 1048, 1052 (N.M. App. 2004), *cert.denied*, 544 U.S. 920 (2005).

The claim here is to declare the rights of class members under practically identical form contracts.  Courts everywhere realize that the concept of breach of contract is simple and uniform.  The binding law in this circuit is very clear.  **"A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."**  *Klay v. Humana,* 382 F.3d 1241, 1263 (11th Cir. 2004), *cert. denied sub nom, United Health Group, Inc. v. Klay,* 125 S. Ct. 877 (Jan. 10, 2005) (emphasis added); *see also Singer v. AT&T Corp.,* 185 F.R.D. 681, 692 (S.D. Fl. 1998) (certifying breach of contract class and recognizing that a breach of contract claim is "universally recognized" and "materially the same throughout the United States").

A breach of contract action over the interpretation of insurance policies, with class members from forty-seven states, has been certified by a district court in the Second Circuit.  *Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 73 (E.D.N.Y 2004).  The issue in *Steinberg* was whether an automobile insurer breached its form contracts by charging "betterment charges," in addition to the deductible, when a car needed repair.  The contracts

did not expressly allow "betterment charges," so the court had to decide whether the insurer could add these charges.  In granting the motion for class certification, the court recognized that "the plaintiff's claim is for the simple breach of a standard form contract and involves only the standard rules of contract interpretation."  *Id.* at 76.

In another simple contract case, a federal court in Florida certified a nationwide class against a telephone company for overcharging people for having multiple lines.  *Singer v. AT&T Corp.,* 185 F.R.D. at 692.  That court stated the obvious:  a breach of contract claim is a universally recognized action that is "materially the same throughout the United States."  *Id.*  Dismissing the defendant's choice-of-law argument as "merely rhetoric at this stage," the court noted:

> It is well-established that consideration of choice of law issues at the class certification stage is generally premature.  Many courts find that it is inappropriate to decide choice of law issues incident to a motion for class certification.  Often purported choice of law difficulties are found to be too distant and speculative.

*Id.* at 691.

In sum, multi-state contract cases involving simple legal issues can be certified even when potential choice of law issues exist.  *See Sec. Benefit Life Ins. Co. v. Graham,* 306 Ark. 39, 44, 810 S.W.2d 943, 945 (1991) ("The mere fact that choice of law may be involved in the case of some claimants living in different states is not sufficient in and of itself to warrant a denial of certification.").

The present case is *so simple*, and the contracts *so uniform* in their application, no choice of law problem exists at all.  The contracts are essentially self-executing:  if a loan is paid off early, a refund is due.  With the essential question this simple, there is no reason to

surmise that a class member who paid off early would not be entitled to a refund under the law of his home state.

      **b.**     **No choice of law issue exists when the putative class's breach of contract claims do not vary significantly from state to state.**

Although the Court need not decide at this juncture which state's laws will control this action, Defendant may argue that the applicable laws of each state differ sufficiently to defeat commonality.  For the following reasons, there is clearly no conflict in state laws that would impede the certification of the putative class's breach of contract claims.

This Court must apply the Georgia conflict of law rules to this matter.  *Klaxson Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1961) ("The conflicts of law rules to be applied to the federal court in Delaware must conform to those prevailing in Delaware's state courts.").  First of all, Georgia courts, faced with this precise question, have concluded the conflict of law issue was no impediment to class certification of a nearly identical class.  In rejecting a challenge to class certification based on the supposed application of the laws of 38 states, the Court of Appeals in *Toole* held: "The certification of multistate class actions involving materially similar form life insurance policies are classic cases for treatment as a class action." 280 Ga. App. at 377 (internal quotations omitted).

Under the Georgia conflict of law rules that this court must apply, Georgia substantive law may be applied to the breach of contract claims here because "Georgia's choice of law system . . . has an unusual characteristic: 'the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes.'"  *In re Tri-State Crematory Litig.* 215 F.R.D. 660, 677 (N.D. Ga. 2003) (quoting *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.,* 713 F.2d 1500, 1503 (11th Cir.1983)).  Therefore, "[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."  *Id.*

(quoting *Frank Briscoe,* 713 F.2d at 1503).  Obviously, Plaintiff's claim does not hinge on any statutory cause of action.[15]

Even if the Court considers whether Plaintiff's breach of contract claims would implicate differing state law, the Supreme Court has recognized that "contract law is not at its core diverse, nonuniform and confusing."[16]  *See* pp. 17-18, *supra.*

### c.    Different statutes of limitation and minimum refund laws are easily applied.

With the fundamental issue here being so simple, only a few real "choice of law" issues exist with respect to the contract issue, and those are easily addressed.  These are the differing contract periods of limitations, differing minimum refunds amount rules, and differing methodologies for calculating refunds.  Neither of these minor differences in applicable law prevents certification.  *See Klay,* 382 F.3d at 1259-60 ("Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification"); *see also Steinberg,* 224 F.R.D. at 78 ("Variances in the

---

[15] The only differing state law rules applicable to this Court's consideration of this case are different minimum refund rules, different methods for calculating refunds, and different periods of limitations.  Those differences can be, and in fact regularly are, resolved by computer strokes.  All ANICO's computers need to know is the state in which the policy was issued, and ANICO has that information. (*See* Exh. 18, Minimum Refund Law Appendix; Exh. 19, SOL Appendix).  Although Plaintiff's claim is for breach of contract and not for the breach of any statutory duty, it is clear that all states in which ANICO sold credit insurance statutorily provide for a refund of unearned premiums just as Plaintiff seeks in this breach of contract action. (*See* Exh. 20, State Refund Laws Appendix).

[16] Additionally, it is clear that there are no material differences among the states' basic contract formation principles, nor among their breach of contract principles.  (*See* Exh. 21, Contract Law Appendix (look to four corners of contract); Exh. 22, Breach of Contract Law Appendix).  It is also clear that all implicated states employ the *contra preferentum* principle that any ambiguity in a contract must be construed against the drafter.  (*See* Exh. 23, *Contra Preferentum* Law Appendix).

states' contract laws such as differences in statutes of limitations, do not preclude class certification.")

The statute of limitations issue can be addressed by the class definition because the class will include only people whose contract claim could have accrued within the applicable limitations period.  (*See* Exh. 19, "Limitations Periods Appendix")

Resolving any differences in applicable minimum refunds is also very simple and can be addressed on a large scale basis through the use of a simple computer program already in place in ANICO's system.  (*See* Exh. 1, Pangburn Depo. at 38/20-24).  If a refund falls below the applicable minimum, then that person does not receive a refund.  (*See* Exh. 18, "Law Governing Minimum Refunds Appendix").

Applying different methodologies to calculate the refund based on the law of the state in which the policy was issued can likewise be done by computer, and in fact is done by computer, by ANICO and other credit insurers. ANICO's own records reflect the state of issuance.

No differences in state law affect the only factual issue in this case – whether a class member's loan terminated before the insurance coverage expired.  Once that controlling issue is determined, the proper limitation period, minimum refund laws, and applicable methodology for calculating refunds are easily applied.

    **d.**    **The "Notice" Requirements in certain policies do not defeat commonality.**

Plaintiff anticipates that ANICO will argue that commonality of its credit insurance policies cannot be established because language purporting to require insureds to notify ANICO of an insured loan prepayment or termination has been included in some states'

certificates. [17]   But this notice issue is not a real issue at all because none of those contractual notice requirements require *pre-suit notice*.  (*See* Exh. 8, Contract Forms Appendix- Notice Requirement).  For purposes of this lawsuit, at least two events have provided and will provide ANICO with notice of a claim for unearned premiums due to early payoff.

First, the filing of the class action complaint provided ANICO with constructive notice that all class members may be owed refunds.[18]  In *Toole,* the Georgia Court of Appeals found that the filing of a class action complaint can provide sufficient notice to allow a credit insurance unearned premium refund case to proceed as a class action.  280 Ga. App. at 373-74. Other courts have also found that the filing of a class action complaint satisfies a notice provision, even if that provision includes a specific time frame.  *See Powers Law Offices, PC v. Cable & Wireless USA, Inc.* 326 F. Supp. 2d 190, 194 (E.D. Mass. 2004) (holding that filing of class action complaint satisfied specific 45-day notice requirement for consumer and noting that "courts have readily found that the filing of a complaint satisfies notice provisions"); *see also Strzakowlski v. General Motors Corp.,* 2005 WL 2001912 (D.N.J. Aug. 16, 2005) (filing of class action provided notice).  If filing a class action can satisfy a real notice provision that contains a specific time deadline, surely filing a class action satisfies any concerns over proper notice when ANICO's notice provisions, to the extent they are included in ANICO's form contracts, do not contain a specific time deadline.

---

[17] Written notice requirements were adopted or included by endorsement in a number of ANICO's insurance certificates around the year 2005.  (*See* Exh. 24, Table of Dates that Notice of Early Termination (NOET) language was implemented in ANICO policies, produced by ANICO through informal discovery; *see also* Exh. 8, Contract Forms Appendix- Notice Requirements).

[18] ANICO itself admits that any notice requirements in its certificates are not intended to require notice within any defined time period, and that ANICO has never denied a claim for a refund of unearned premium on the grounds that the insured gave untimely notice of the early loan payoff.  (*See* Exh. 25, Def.'s Resp. Pl. Perkins' 1st Rogs at No. 15; *see also* Exh. 26, Def.'s Resp. Pl. Perkins' 1st RFA no. 11).

Furthermore, by analogy, courts everywhere acknowledge that filing a class action tolls the statute of limitations for absent class members.  *See State v. Private Truck Council of Am., Inc.*, 258 Ga. 531, 533, 371 S.E.2d 378, 380 (1988) ("when a class action is filed, the statute of limitations for the action is tolled for all asserted members of the class during the pendency of the action.  The tolling of the statute of limitations permits class members to rely on the class action to protect their rights without concern that the statute of limitations on their individual claims will have run should class certification ultimately be denied.").  If the filing of a class action complaint is powerful enough to prevent a defendant from asserting a statute of limitations defense against similar claims, surely it is vigorous enough to place that defendant on notice that similar claims exist.

Second, before ANICO is required to refund a penny in compliance with the Court's declaration of the rights of the class members, it undoubtedly will have received specific notice of an early payoff for each and every person the company ends up having to pay.  Plaintiff's Motion for Order Governing the Production of Evidence and Brief in Support Thereof details the means by which ANICO can be apprized of the exact identity of each class member, as well as the exact amount of unearned premium owed.

### 5.    Any "notice" provisions must be ignored.

Any notice provision in Defendant's newer insurance policies creates an internal conflict with the contract prepared by Defendant.  On the one hand, the contract states, as it logically must, that upon early termination a refund of unearned and un-earnable premium will be paid.  When the insurance terminates early, the balance of the premium can never be earned and Defendant can never be entitled to keep that unearned premium.  On the other hand, however, ANICO claims some of its newer policies purport to provide that Defendant may

keep the unearned premiums, unless the insured gives "notice" to Defendant of early termination.

Because the contract at issue is an insurance contract and because Defendant itself drafted the contract at issue, any conflict or confusion in the insurance contract must be resolved against the interest of the Defendant as drafter of the document, and so any such "notice" provision must be ignored.  *See* Travelers Ins. Co. v. Mixon, 118 Ga. App. 31, 33, 162 S.E.2d 830, 830 (1968).  (*See also* Exh. 23, *Contra Preferentum* Law Appendix).  To do so is both logical and just.  Any other holding would allow Defendant to benefit from its deliberate scheme to remain willfully ignorant of early terminations, rather than monitoring its insured loans so that it could fulfill its contractual promise to pay refunds upon early termination, by retaining unearned premiums to which Defendant is not entitled and to which Defendant can never be entitled.

Defendant's attempt to use "notice" provisions to justify keeping its insureds' money amounts to trying to shift Defendant's own job to its insureds – the job of making sure that if there is early termination, Defendant does not retain money which belongs to its own customers.

### 3.        Federal Rule 23(a)(3) - Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

> [**T**]**ypicality** measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large . . . . Traditionally, commonality refers to the group characteristics of the class as a whole [while] **typicality** refers to the individual characteristics of the named plaintiff in relation to the class.

*Cooper,* 390 F.3d at 713 (alterations in original); *see also* 1 Newberg § 3.13.  Some nexus must therefore exist between the class representative's claims and the common questions of fact or law that unite the class.  In this case, the legal theory is the same for each and every class member and should be adjudicated in a single proceeding.

> [T]here is no similar requirement that all putative class members share identical claims.  In fact, typicality . . . 'may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large . . . [although it is] require[d] that the named representatives' claims share the same essential characteristics as the claims of the class at large.  [A] strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences.

*Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001) (citing *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984) (stating that "a sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory")).  In other words, the question is whether the same conduct was directed at Plaintiff and the class Plaintiff seeks to represent.

In this case, Plaintiff's claims are identical to those of the other class members.  (*See* Exh. 3, Perkins Policy at 3; *see also* Exh. 4, ANICO Form Contract Refund Provision Appendix; *see also* Exh. 1, Pangburn Depo. at 20/22-23/25; 25/4-17; 26/7-23).  Plaintiff and the class members all share contractual claims which turn on substantially similar contractual language regarding the refund of unearned premiums, and the terms by which each class member is entitled to a refund of unearned premium are practically identical.  When the Plaintiff and the class are seeking the same relief under the same legal theories, typicality is satisfied.  Plaintiff's claim is typical also because he seeks a declaration that ANICO must

return unearned premiums based on his early payoff.  This declaration (and an accompanying injunction) would impact all class members.

### 4.      Federal Rule 23(a)(4) - Adequacy of Representation

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class.  Courts recognize that the issue of whether a named plaintiff is adequate "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  *Valley Drug Co.,* 350 F.3d 1181, 1189 (internal quotations omitted).

The Court's analysis under Rule 23(a)(4) applies also to the named plaintiff's counsel. *Piazza,* 273 F.3d at 1355 n.11 (citing *General Telephone Co.*, 457 U.S. at 157 n.13).  "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney."  1 NEWBERG § 3:24, at 417 n.2 (quoting Symposium on Class Actions, *The Class Representative: The Problem of the Absent Plaintiffs*, 68 NW. U. L. REV. 1133, 1136 (1974)).  "In reaching a determination concerning vigorous prosecution of the action on behalf of the class, courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary."  1 *Id*. § 3:24, at 417-18.  This Court has already found that Counsel for Plaintiff are well qualified to represent both Plaintiff and the putative class in this matter, and have already been appointed class counsel by this Court.  *See* 3/1/07 Order [Pacer Doc. 70].   Plaintiff, however, tenders the following as additional evidence:

The lawyers who represent the plaintiff and the class are knowledgeable and experienced in complex class actions and commercial litigation.  *See* Plaintiff  Perkins' App.

for Appt. of Interim Class Counsel [Pacer Doc. No. 65].   The efforts of counsel for Plaintiff thus far show that they are committed to vigorous prosecution of this action and possess the skills to do so.  Plaintiff and his lawyers are particularly well-suited for this case, and they will fairly and adequately protect the interests of the class in compliance with Rule 23(a)(4).  *See id.*

Plaintiff's interests are clearly aligned with those of the class; he has demonstrated his willingness and ability to pursue the claims vigorously.  (*See* Exh. 7,  Aff. of Perkins at 8-11, 14).  No indication of conflicting interests exist.  (*See id.* at 15).  The requirements of 23(a)(4) are satisfied.

### 5.   Manageability

In addition to the expressly stated four requirements of Rule 23(a), courts have held that it is proper to assess whether the putative class action would be "manageable" upon certification.  Plaintiff anticipates that ANICO will argue that the putative class is unmanageable because of the individualized inquiries needed to determine the exact amount of unearned premiums that must be refunded to each class member.  However, the Eleventh Circuit has already considered, and rejected, a similar argument:

> The final factor expressly specified in Rule 23(b)(3) that courts must weigh in deciding to certify a class action is whether certification will cause manageability problems. This concern will rarely, if ever, be in itself sufficient to prevent certification of a class. Courts are generally reluctant to deny class certification based on speculative problems with case management.  Even potentially severe management issues have been held insufficient to defeat class certification.

*Klay,* 382 at 1272-73 (internal citations and quotations omitted) (citing *In re Thermagenics Corp. Sec. Litig.,* 205 F.R.D. 687, 697 (N.D.Ga.2002) ("Certification cannot be denied because the number of potential class members makes the proceeding complex or difficult.")).

As explained in pp. 8-10, *supra.*, the only data point needed to determine whether a refund is due to a particular insured (and, if so, how much) that ANICO may not presently possess is the Loan Termination Date, or LTD, for an insured's underlying loan.  It is Plaintiff's position that even if ANICO does not now have all the LTDs for its insureds (as it should), ANICO has ready access to that datapoint, either from its own dealer/agents (whose information is, as a matter of law, within the possession, custody, or control of ANICO), or from the lenders, who are ANICO's loss payees.  *See* Pl.'s Mot. Order. Governing Prod. Evid. and Brief in Support Thereof.  Plaintiff also contends that ANICO was required to obtain and maintain the LTDs, for otherwise it could not possibly fulfill its contractual promise to pay refunds upon early termination.  Of course, that is exactly why ANICO failed to obtain and maintain those LTDs.  But the issue of who should now obtain those LTDs – ANICO or Class Counsel – is not something this Court must decide with respect to class certification.  It is sufficient for 'manageability' analysis that the necessary information can be obtained, and as to that, there is no doubt.  By ANICO or by Class Counsel, the information can undoubtedly be obtained.  The issue of who will be responsible for obtaining that one data point, the LTD, is an issue that may be addressed after the class has been certified.

Once the LTD is reconciled with the other information within Defendant's own computer database, either ANICO or a special master can easily ascertain the class list and the amounts owed to each class member.  Defendant's own computer systems, in fact, can be used to generate the class list as well as to calculate the amount of unearned premium due to each class member.  (*See* Exh. 1, Pangburn Depo. at 38/20-24).

As stated above, the Court can easily manage the differing state laws as they apply to the minimum refund amounts and statutes of limitation for each class members' claim.  *See* pp.

21-22, *supra.*  Furthermore, any question regarding locating the class members and adequately administrating the claims can be resolved as detailed in Plaintiff's Motion for Order Governing the Production of Evidence and Brief in Support Thereof.

### 6.    Ascertainability

"To meet [the] threshold [of ascertainability], a proposed class definition must specify a particular group harmed during a particular time period via a particular manner, such that the district court can utilize objective indicia to determine who is and is not part of the class." *Fisher v. CIBA Specialty Chems. Corp.*, 238 F.R.D. 273, 301 (D.Ala. 2006).  *See also* 2 Newberg § 6.17 (class definition should describe characteristics or facts that make ultimate identification of class members possible when that identification becomes necessary).

Plaintiff's proposed class definitions meet the above criteria:

(1) the definitions specify particular groups: (a) those persons insured by ANICO and who either are due refunds or require prospective relief to insure that ANICO actually pays refunds when due in the future, and (b)  those persons who purchased single premium credit insurance from ANICO and prepaid their insured loans but have not received a refund;

(2) the definitions specify a particular time period: a time period equal to the applicable period of limitations in the various states prior to the filing of Plaintiff's Complaint ; and

(3) the definition specifies how the group was harmed in a particular manner: (a) when members of the class prepaid their underlying insured loans, they did not receive a return of unearned premiums to which they were contractually entitled, and (b) current insureds who have not yet terminated early are entitled to prospective relief to assure that if and when they do so, ANICO will be required to pay unearned premium refunds.

This class definition relies solely upon objective criteria to determine who falls within the class. *See* 5 Moore § 23.21[4][a] ("[A] class description that defines a class as having been damaged or injured by particular wrongful actions taken by the defendants can be adequate."). As stated previously, the assessment of who is owed an unearned premium and in what amount is a simple calculation using the seven data points enumerated on pp. 8-9, *supra*. There is no subjective analysis. In fact, Defendant's own computer database and software can automatically generate the class list and the amount owed each class member when the LTDs are added to other information about ANICO's insureds that ANICO already has. (*See* Exh. 1, Pangburn Depo. at 38/20-24).

That a class list can readily be reconstructed using the approach contemplated by Class Counsel has been established by the work of the Texas Attorney General's staff. In addition, other attorneys conducting identical litigation have both employed this very method of determining a list of class members. *See* Aff. of Kim McCallister [Pacer Doc No. 60]; *see also* Pl.'s Brf. re Mot. Order. Gov. Prod. Evid. [Pacer Doc. No. 81 at 10-17 and Exhs. 19 & 20.]   In addition, another court has already approved the approach contemplated by Class Counsel. (*See* Exh. 27, 3/5/07 & 3/8/07 Orders, *Toole v. J.M.I.C. Life Ins. Co.*).

**C.**     **The Proposed Class Satisfies Federal Rule 23(b)(2).**

A class should be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Although the subsection contemplates declaratory and injunctive relief, it does not preclude monetary relief:

> This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive

> nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate···· The subdivision does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages.

Fed. R. Civ. P. 23(b)(2), advisory committee note (1966) (emphasis added).

In *Cooper*, the Eleventh Circuit held that claims for money damages could be asserted in a (b)(2) class action if the damages were incidental to Plaintiff's claims for equitable and/or declaratory relief.  390 F.3d at 720.  "By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.... Liability for incidental damages should not ... entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions."  *Id.* (alterations in original).

The instant action undeniably seeks to redress a group-wide injury that, even now, is continuing to be perpetrated on unsuspecting insureds who have terminated their underlying insured loans early.  Because ANICO admits that it still does not refund unearned premiums to insureds who terminate their loans early unless ANICO is expressly notified of this occurrence, a significant group of ANICO's insureds continue to have their hard-earned money wrongfully withheld.  (*See, e.g.,* Exh. 25, Def.'s Resp. to Pl. Perkins' 1st Rogs. at No. 10 ("Unless contacted by the insured or the dealer, ANICO is completely unaware that a debt has been repaid and that unearned premium may be due.")).  Therefore, Plaintiff's claim for money damages are entirely consistent with, and derive from, Plaintiff's asserted claims for declaratory and injunctive relief to prevent ANICO from wrongfully withholding unearned premiums of its insureds in the future.  *Indeed, if such equitable and declaratory relief is not granted, another putative class of insureds will invariably accumulate after the resolution of*

*this putative class's claims.*  Such a result would be contrary to the purpose this class action

and would be unacceptable to any plaintiff reasonably concerned about protecting the rights of

insureds who in the future also terminate their underlying insured loans prior to the loans'

maturity date.

> **D.     The Proposed (b)(3) Class Satisfies the Additional Requirements of
>          Predominance and Superiority.**

Class certification under Rule 23(b)(3) is appropriate when "the court finds that the

questions of law or fact common to the members of the class predominate over any questions

affecting only individual members, and that a class action is superior to other available

methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

The Court's "focus is not on the convenience or burden of a class action suit *per se,* but on the

relative advantages of a class action suit over whatever other forms of litigation might be

realistically available to the plaintiffs."  *Klay*, 382 F.3d at 1269.

> **a)  Predominance**

> A single common issue may be the overriding one in the litigation, despite the fact that
> the suit also entails numerous remaining individual questions.
> …
>        In finding that common questions do predominate over individual ones
> in particular cases, courts have pointed to such issues that possess the
> common nucleus of fact for all related questions, have spoken of a common issue as the
> *central*; or *overriding* question, or have used similar articulations.

2  Newberg § 4:25, at 172-73 (internal citations omitted) (emphasis supplied).

The central question in the case is whether a ANICO policyholder who pays off early is

entitled to a refund of unearned premiums.  Practically identical contract terms govern the

obligations ANICO owes to each class member.  (*See* Exh. 1, Pangburn Depo. at 20/22-23/25;

25/4-17; 26/7-19; *see also* Exh. 3, Perkins Policy at 2; *see also* Exh. 21, ANICO Form

Contracts Appendix).  Each member of the class benefits from a ruling that ANICO must

refund unearned premiums if a debt stopped before coverage expired.  ANICO's form contracts and its refusal to pay refunds whenever early termination occurs provide the common factual basis for resolving this issue.  The duties are within the policy itself and go to the very essence of the bargain for each and every policyholder.  Specifically, based on the language in policies, Plaintiff contends that ANICO is bound to refund unearned premiums if the debt stops before coverage expires.  If Plaintiff proves that ANICO owes him a refund, each absent class member should be able to show an entitlement to a refund in a similar manner.

These common issues predominate over the ministerial task of comparing two objective records -- the LTD and the policy expiration date.  It is worth noting that the injury here is limited to economic harm, which means that no inquiry into the class members' physical or mental state is required.  Resolving this case on a class-wide basis requires nothing more than a legal ruling on ANICO's duty followed by simple mathematics to add up the damages.  Courts everywhere "have consistently certified classes involving economic harms."  *Shaw v. Toshiba Am. Info. Sys. Inc.,* 91 F. Supp. 2d 942, 958 (E.D. Tex. 2000).  The economic harm suffered by each class member stems from ANICO's breach of its contractual and statutory duties, so no complicated causation issues exist, either.

The foregoing demonstrates that the only individual fact to be determined here -- when the loan was paid off -- can be confirmed through computer records, with clerical assistance, and is completely objective.  *See* Aff. of Kim McCallister [Pacer Doc. 60] (showing Texas Attorney General's ability to determine loan termination dates and ensuing class list); *see also* Pl.'s Brf. re Mot. Order. Gov. Prod. Evid. [Pacer Doc. No. 81] at 10-17 and Exhs. 19 & 20.] When, as here, damages are easily ascertainable from available records, the class should be certified.  *See* 2  Newberg § 4:26, at 225-232 & 229 n.92.

34

### b)  A class action is superior to individual actions.

For Rule 23(b)(3) certification to be proper, a class action also must be the most "fair and efficient" method of resolving this case.  *See* Fed. R. Civ. P. 23(b)(3).  In analyzing that question, courts must consider four nonexclusive factors: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."  *Id.*

The Supreme Court, in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985), recognized that without a class action, many claims would never be adjudicated:  "Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . ."  *Id.* at 809; *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (When it is economically infeasible for claimants to file individual damage suits, aggrieved persons may be without effective relief unless the class action remedy is available).

Plaintiff's analysis suggests thousands of class members will be entitled to a refund of unearned premiums.  The average refund due to these class members is likely to be only a few hundred dollars per policy.  (*See* Exh. 28, Daniel ltrs. of 3/28/06, 4/5/06, 6/1/06 and Mytelka ltr. of 1/30/07) (listing average refund amount per state); *see also* Aff. of Kim McCallister [Pacer Doc. No. 60] at Exh. B, ¶ 1.4 (finding average amount of refund owed to Texas insureds to be $268.75).  With such a small amount of damages per class member at stake, it follows that this is the sort of "negative value" claim that is ideal for class-wide resolution.  *See Rutstein v. Avis Rent-A-Car Systems, Inc.,* 211 F.3d 1228, 1241 n.21 (11th Cir. 2000)

(recognizing that "the most compelling justification for a Rule 23(b)(3) class action" is "the possibility of negative-value suits") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).  A decision in favor of Plaintiff will benefit the entire class and advance the interest of all class members because his claims align with those of the entire class.

Here, Plaintiff has proposed a streamlined approach to determine liability and to calculate damages.  In light of the small amount of refund available to the average class member, it is clear that most, if not all, members of the class would prefer to have their rights determined in this class action rather than trying to bring their own individual lawsuits.

This "negative value" factor also cuts in favor of resolving this controversy in one court.  To only allow claims to proceed on a state-by-state basis would be inefficient, as some people who are identically situated with Plaintiff would be left behind.  This would be true because class actions would only be brought in states where enough class members terminated early to make a class action economically feasible.

There should be no difficulty managing the proposed class action.  The uniformity of the contracts, the simplicity of the claim, and the purely objective determination of whether a loan was paid off early and the computer calculation of what refund is due all suggest that manageability is not a problem.  The Court is well prepared to handle any issues that may arise as this case proceeds.  If significant manageability problems arise, the Court can always revisit the issue of certification, de-certify the class, partially de-certify the class, or certify one or more sub-classes.

Judicial economy dictates that the claims of all these similarly situated persons should be resolved in a single action.  Here, if Plaintiff prevails on the overarching legal issue of

whether ANICO must refund unearned premiums if a debt stops before coverage expires, then each of the class members who paid off early like Plaintiff should receive a refund.

**IV.**     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court certify a class in this action pursuant to Federal Rule 23(b)(2) and/or (b)(3).

BUTLER, WOOTEN & FRYHOFER, LLP

*/s/ James E. Butler, Jr.*
James E. Butler, Jr.
Georgia Bar No. 099625
Joel O. Wooten
Georgia Bar No. 776350
105 Thirteenth Street
Columbus, GA 31902
Telephone:  706-322-1990
Fax:  706-323-2962

OATES & COURVILLE
SAMUEL W. OATES, JR.
Georgia Bar No. 548250
P.O. Box 20
Columbus, GA 31902
Telephone:  706-327-8000

PHILIPS-BRANCH
Ben B. Philips
Georgia Bar No.:  575550
P.O. Box 2808
Columbus, GA 31902
Telephone:  706-323-6461
Fax:  706-571-0765

CHARLES A. GOWER, P.C.
Charles A. Gower
Georgia Bar No.:  303500
C. Austin Gower, Jr.
Georgia Bar No.:  303528
Teresa T. Abell
Georgia Bar No. 000383
P.O. Box 5509

Columbus, GA 31906
Telephone:  706-324-5685
Fax:  706-322-2964

HATCHER, STUBBS, LAND,
  HOLLIS & ROTHSCHILD,  LLP
William B. Hardegree
Georgia Bar No. 324400
Gregory S. Ellington
Georgia Bar No. 246863
P.O. Box 2707
Columbus, GA 31902
Telephone:  706-324-0201
Fax:  706-322-7747

RATLIFF LAW FIRM, P.L.L.C.
Shannon H. Ratliff
Texas Bar No. 16573000
Lisa A. Paulson
Texas Bar No. 00784732
600 Congress Avenue, Suite 3100
Austin, TX 78701
Telephone:  512-493-9600

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| PAUL PERKINS, Individually and on | ) | |
| Behalf of a class of all persons | ) | |
| Similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File No: |
| | ) | 3:05-CV-100 (CDL) |
| AMERICAN NATIONAL INSURANCE | ) | |
| COMPANY, a Foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2007 I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following:

> W. Seaborn Jones
> Derrick L. Bingham
> OWEN, GLEATON, EGAN, JONES & SWEENEY, LLP
> Promenade Two, Suite 1400
> 1230 Peachtree Street, NE
> Atlanta, GA  30309
>
> John L. Carter
> Kathleen B. Spangler
> Stacey Neumann Vu
> Elena DiLorio
> VINSON & ELKINS
> 1001 Fannin Street, Suite 2300
> First City Tower
> Houston, TX  77002

Eric Joseph Kirkpatrick
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Floor
Galveston, TX 77550

Richard Young Bradley
P.O. Box 2866
Columbus, GA 31902-2866

Robert J. Blech
P.O. Box 12548
Austin, TX  78711-2548


I also certify that I have mailed by United States Postal Service the document and a

copy of the Notice of Electronic Filing to the following non-CM/ECF participants:


Andrew J. Mytelka
Scott Daniel
Kelly Ann F. Clarke
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Floor
Galveston, TX 77550


/s/James E. Butler, Jr.
BUTLER, WOOTEN & FRYHOFER, LLP
James E. Butler, Jr.
Georgia Bar No. 099625
Joel O. Wooten
Georgia Bar No. 776350
105 Thirteenth Street
Columbus, GA 31902
(706) 322-1990