UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| PAUL PERKINS, Individually and on Behalf of a Class of all Persons Similarly Situated | § § § § | |
| | § | CIVIL ACTION NO.: 3:05-CV-100 (CDL) |
| v. | § § | |
| AMERICAN NATIONAL INSURANCE COMPANY, a Foreign Corporation | § § § | |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF REQUEST FOR AWARD OF ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE FEES**

Class Counsel respectfully seeks approval of an award of attorneys' fees and expenses for the prosecution of this matter and an award of class representative fees. After over five years of contentious litigation, extensive discovery, an appeal and the resolution of dispositive motions, the parties have engaged in protracted negotiations leading to settlement.[1]

## I.   THE SETTLEMENT IS INNOVATIVE AND BENEFICIAL TO THE CLASS.

On May 16, 2007, this Court preliminarily approved a Settlement Agreement between Plaintiff Paul Perkins ("Plaintiff" or "Perkins") and Defendant American National Insurance Company ("Defendant" or "ANICO"). Pursuant to the terms of the Settlement Agreement, ANICO agreed to: (1) facilitate a third-party administrator's efforts to create a database identifying class members who are currently owed unearned premium refunds, and the amount of such refunds owed ; (2) to institute prospective

---

[1] The terms and conditions of the Settlement are contained in the Settlement Agreement, which the Court preliminarily approved on May 16, 2007 (the "Settlement Agreement" or the "Agreement"), the original of which has been filed [Pacer Doc. No. 93-2]. In this memorandum, Plaintiff merely highlights particular parts of the Settlement.

relief intended to insure that, in the future, unearned premium refunds are properly paid to insureds whose loans terminate early; and (3) to allow any payments to Class Members that are returned or that are not cashed within an appropriate period of time as determined by the Court, be paid into a Remainder Fund to be administrated by a committee composed of the Court and Class Counsel for charitable purposes and for the purpose of advancing consumer awareness and consumer rights. Moreover, the Settlement has been structured such that the Settlement Administrator has identified Class Members due payments from the Settlement Fund without requiring these Class Members to provide written documentation of early pay off themselves. The Court set the date for the Fairness Hearing for January 14, 2009.

After nearly four years of hard-fought litigation, Class Counsel has achieved a Settlement that is a favorable result for this Class and which merits the final approval of the Court. The Settlement provides for the identification of each Class Member and the amount of unearned premium refund due to each Class Member, which meets and exceeds all due process requirements. It is designed to ensure that as many potential claimants as reasonably possible will actually receive notice and learn of the settlement and will receive a refund of unearned premium if their loan terminated early. If information of early payoff is available to the Settlement Administrator from a source other than the Class Member, the insured will not have to provide any documentation proving that he or she paid off the loan early in order to qualify for a refund.

Class Counsel has done everything reasonably possible to see to it that the potential Class Members who are owed unearned premiums will be reunited with their money. Class Counsel sought out and secured the necessary information and materials to

develop a method by which ANICO, working with the Settlement Administrator, could: (1) reasonably identify each Class Member; (2) analyze the circumstances of each Class Member's underlying insured loan and insurance certificate to determine whether any unearned premium is owed; and (3) calculate the amount of each Class Member's unearned premium refund using the applicable laws and formulas for each state in which a certificate of insurance was issued.  Class Counsel also obtained ANICO's agreement that any unearned premiums that are identified but ultimately unclaimed will be placed in a Remainder Fund to be distributed by the Court and Class Counsel for the charitable purposes of advancing consumer awareness and consumer rights.

As the Court is well aware, this Settlement was the product of intense, contested litigation, both in this action and the related actions of *Gross v. American National Insurance Company*, Case No. SU-05-CV-569-6 (Superior Court, Muscogee County, Georgia) and *Boren v. American National Insurance Company*, Case No. A06CA294 LY (W.D.Tex., Austin Div.).  Plaintiff reviewed thousands of pages of documents concerning and establishing, among other things, ANICO's policies and practices in connection with its sales of single premium credit insurance and its practices and procedures (or lack thereof) in connection with early payoffs of insured indebtedness, its standard form contracts, its relationships with its insurance producers including automobile dealerships, its document retention practices, its computer database systems and capabilities including fields stored and retrievable, and its hard copy document storage practices.

Much of the discovery relevant to this Action was first requested, produced and reviewed in the related *Gross* case, which is still pending in the Superior Court of

Muscogee County.[2]  *See* Exh. A, Wooten Aff.  Likewise, as this Court will recall, Class

Counsel expended considerable time and resources urging this Court to retain jurisdiction

of this matter when ANICO entered into what Class Counsel considered a substandard

competing nationwide settlement in the Western District of Texas.  *See id.; see also, e.g.,*

Pl.'s Emergency Motion to Determine Whether ANCIO May Divest this Court of

Jurisdiction [Pacer Doc. No. 23-1].

## II.  THE REQUESTED ATTORNEYS' FEE IS FAIR AND SHOULD BE APPROVED.

Class Counsel asks the Court to approve an award of attorneys' fees in this case of

25% of the recovery made for all Class Members identified by the administration of this

Settlement (the "Proposed Fee").  The Proposed Fee is reasonable and fair compensation

to Class Counsel for its efforts, especially considering the outstanding results obtained in

this case.  Through skillful, focused litigation, Class Counsel has secured substantial

benefits for members of the class.  The substantial recovery to the class brought to the

table by these attorneys includes: (1) a total settlement package refund consisting of

125% of the total unearned premium refunds that the 94,415 identified Class Members

are entitled to receive;[3] (2) the administration of the Settlement and the dissemination of

unearned premium refunds without requiring separate documentation from most Class

Members and while avoiding the risk and delay of trial and subsequent appeals;[4] and (3)

---

[2] Class Counsel and Mr. Gross, who is also represented by Class Counsel, have agreed
to dismiss this action in the Superior Court of Muscogee County, Georgia ten (10) days
after the entry of a Non-Appealable Final Judgment in this Case.  *See* Settlement
Agreement [Pacer Doc. No. 93-2] at ¶ 15.

[3] Those unearned premium refunds which remain unclaimed will be go to a Remainder
Fund set up for the benefit and education of consumers.  *See* Settlement Agreement
[Pacer Doc. No. 93-2] at ¶ 54.

[4] *See* Jt. Mot. for Final Cert. of Sett. Class at 5-7 for a detailed explanation of the

the establishment of prospective relief specifically tailored to significantly alleviate and/or reduce the number of any unearned premium refunds that may be retained by ANICO in the future.  *See* Exh. B, Aff. of Joseph Russo at ¶¶ 5-11; *see also* Exh. C, Aff. of James E. Butler Jr.; *see also* Settlement Agreement [Pacer Doc. No. 93-2] at ¶ 49.

### A.  Counsel Is Entitled to Compensation for Creating a Common Benefit for the Class.

The recovery secured as a direct result of this Settlement constitutes a common benefit to the 94,415 Class Members.  *See also* Settlement Agreement [Pacer Doc. No. 93-2] at ¶ 37; Exh. B, Russo Aff. at ¶ 10.  Attorneys who create a common fund or common benefit for a group of persons are entitled to fees and costs based on the common benefit achieved. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than ... his client is entitled to a reasonable attorney's fee from the fund as a whole.").  The concerted efforts of Plaintiff and his counsel led to the recovery of the full amount of each Class Member's unearned premium refund, even though these Class Members likely would never have learned of their rights to a refund or received such a refund of unearned premiums but for the innovative and extensive process bargained for by Class Counsel during the settlement negotiations.  If not for this lawsuit, ANICO would never have voluntarily made this type of comprehensive relief available to the class and very few potential class members would have ever received any refund.

---

actions taken and resources expended to date regarding the Settlement Administration, which also inures to the Class's benefit.  To be clear, however, Class Counsel only seek to be awarded a percentage of the funds recovered for the 94,415 currently identified Class Members, and not for the overall "benefit" of this Settlement to the identified Class Members or future ANICO insureds.  *See* Exh. C, Butler Aff.

**1.    Under the Common Benefit Doctrine, The Court Should Approve a Fee Reflecting A Percentage of the Overall Class Benefit.**

In the Eleventh Circuit, fees in common fund or common benefit cases are calculated based on a percentage of the class benefit. *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991). Compensating counsel based on a percentage of the benefit secured for the class makes sense.

First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated based on a percentage of the recovery. Courts are encouraged to look to the private marketplace in setting a fee percentage:

> The judicial task might be simplified if the judge and the lawyers spent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.

*In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992). See also, *In re Public Serv. Co. of New Mexico,* 1992 WL 278452, *7, Fed. Sec. L. Rep. 196,988 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery); *In re M.D.C. Holdings Sec. Litig.,* 1990 WL 454747, *7, Fed. Sec. L. Rep. at 197,490 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery").

Second, this approach creates an incentive for counsel to secure the best result possible in the shortest time required. *See Duhaime v. John Hancock Mut. Life Ins. Co., 989 F. Supp. 375,* 377 (D. Mass. 1997) (percentage method focuses on result, rather than the process). The result in this case reflects a good balance – significant discovery battles

to obtain vital information from the Defendant and hard-fought, tenacious litigation on the merits followed by an innovative settlement beneficial to a majority of class members.

Finally, the percentage of recovery method lessens the burdens imposed upon the court by the "lodestar" method and helps the class members receive their settlement benefits in a more timely manner. *See Camden I,* 946 F.2d at 773 (rejecting any approach "premised on the number of hours expended" in common benefit cases) (citing *Court Awarded Attorneys Fees,* Report of the Third Circuit Task Force, 108 F.R.D. at 238, 255).

### 2. The Requested Fee Falls Within the Accepted Range for Fee Awards.

The Proposed Fee in this action is within the range of reasonableness and should be approved.  Looking to analogous federal law, the Eleventh Circuit has directed district courts awarding fees in common fund cases to apply the percentage of the fund approach, with any adjustments as warranted by factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).  *See Camden 1,* 946 F.2d at 774-75; *see also Friedrich v. Fidelity Nat. Bank,* 247 Ga.App. 704, 545 S.E.2d 107 (2001) (expressly adopting *Camden I*'s percentage-of-the-fund fee approach for common funds).  Not surprisingly, many decisions in the Eleventh Circuit fall near this range.  *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11$^{`h}$ Cir. 1999) *(33%); In re Sunbeam Sec. Litig,* 176 F. Supp. 2d 1323 (S.D. Fla. 2001) *(25%); Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685 (N.D. Ga. 2001) *(20%); Ressler v. Jacobson,* 149 F.R.D. 651 (M.D. Fla. 1992) (30%).  The Proposed Fee is reasonable and deserves approval.

### 3. The Application of the *Johnson* Factors Confirms That the Requested Fee Is Reasonable.

*Camden I* sets the benchmark for many class actions fees at 25% and encourages district courts to use the *Johnson* factors, and any other relevant factors, to evaluate, set and review percentage fee awards. *See Camden 1,* 946 F.2d at 775. *See also Friedrich v. Fidelity Nat. Bank,* 247 Ga.App. 704, 545 S.E.2d 107 (2001) (expressly adopting *Camden I*'s percentage-of-the-fund fee approach for common funds and discussing the pertinent factors to be considered by the trial court when evaluating fee awards).    The relevant *Johnson* factors all justify using the benchmark in this case.

#### a. Results Obtained

Courts uniformly recognize that the result achieved on behalf of the class is the most important factor to be considered in evaluating a fee request.  *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained").  Here, counsel has secured substantial benefits on a timely basis and without the risk of further appeals or dissipation of assets by a company in run-off with an innovative Settlement Administrator driven process that will enable a return to eligible class members of 125% of their calculated unearned premium, less attorneys' fees. These benefits are available through a streamlined process without a complicated claims-made process.  The results obtained fully justify approval of the Proposed Fee.

#### b. The Customary Fees for Non-Class Cases

Ordinarily, an individual lawsuit addressing the conduct at issue would be handled on a contingency basis.  Fees on a suit of this nature would most often be higher than the Proposed Fee.  *See In re Public Service Co. of New Mexico,* 1992 WL 278452, *7, Fed. Sec. L. Rep. 196,988 (S.D. Cal. July 28, 1992) ("If this were a non-

representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery); *In re M.D.C. Holdings Sec. Litig.,* 1990 WL 454747, *7, Fed. Sec. L. Rep. 195474, at 197,490 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."). The Proposed Fee is reasonable and should be approved.

### c.  Whether the Fee Was Fixed or Contingent

Counsel undertook this litigation on a purely contingent basis facing a real risk of recovering nothing while having to advance significant time and costs. *See In re Rio Hair Naturalizer Prods. Liab. Litig.,* 1996 WL 780512, *18 (E.D. Mich. Dec. 20, 1996) (recognizing risk entailed in a major investment of attorney time and financial resources); *see also Camden 1,* 946 F.2d at 775. The fact that this case was taken on contingency justifies the 25% benchmark provided for in *Camden I. See Ressler v. Jacobson,* 149 F.R.D. 651, 657 (M.D. Fla. 1992) (awarding 30% fee and noting that in many cases plaintiff's counsel receives no compensation whatsoever); *see also Jones v. Diamond,* 636 F.2d 1364, 1382 (5`h Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."), *overruled on other grounds by Int'l Woodworkers of Am. V. Champion Int'l Corp.,* 790 F.2d 1174 (5`h Cir. 1986). Here, the fact the case was taken on contingency and with Class Counsel having to advance significant amounts of time and substantial case expenses for highly contested and expensive proceedings over a several year period provides more support for a finding that the Proposed Fee is reasonable and should be approved.

### d. Novelty and Difficulty of the Question Involved

The unearned premiums litigation against this defendant, which finally culminated in this settlement, had its genesis back in February, 2005 when Bailey Gross and Class Counsel filed suit in Muscogee County Superior Court after becoming aware that numerous consumers had prepaid their ANICO-insured loans but had not received unearned premium refunds from ANICO despite its contractual obligation to provide those refunds. This Action was filed in October of 2005, and the *Gross* case was ultimately stayed to allow for the prosecution of the *Perkins* case. ANICO vigorously defended this action and the *Gross* case. Class Counsel spent thousands of hours researching and responding to ANICO's motions in both cases, as well as defending this Action from usurpation by the competing *Boren v. ANICO* settlement in the Western District of Texas. Class Counsel also expended significant time and energy filing Plaintiff's motion for class certification, reviewing thousands of documents produced in both this case and the *Gross* case, and researching, developing and refining a methodology to determine the amount of unearned premiums due to each Class Member without requiring documentation from the Class Members themselves. *See* Exh. A, Wooten Aff.; see also Exh. C, Butler Aff.

### e. The Preclusion of Other Employment by Class Counsel as a Consequence of Their Involvement in the Case

The factor addressing preclusion of other employment by counsel also supports the requested fee. The firms prosecuting this action devoted significant work by experienced lawyers over the past four years. Several very experienced lawyers from the law firms representing the Plaintiff have been committed to work on and to prosecute this credit insurance case, through their extensive efforts on this particular case and on other

similar, pending cases. *See*, Exh. A, Wooten Aff. This precluded the attorneys representing this plaintiff and this class from taking other lucrative, fee-generating cases because of the significant time commitment they had made for themselves and their staff to the successful prosecution of this case. This factor also supports the approval of the Proposed Fee.

### f. The "Undesirability" of the Case

This nationwide class action posed a risk of non-recovery and required a substantial commitment of personnel and resources, including the advancing of substantial case expenses over a period of several years. *See* Exh. A, Wooten Aff. Not surprisingly, the consumer class action bar generally has consistently avoided bringing these types of difficult cases. Several years ago, the existence and massive scope of this credit insurance unearned premium problem was documented in a law review article by two prominent members of the national consumer law bar. *See generally* Exh. D., O'Brien, E. and Roddy, J., "*Unrefunded Credit Insurance Premiums: A Multi-million Dollar Constructive Trust*," Consumer Financial Services Litigation (Practicing Law Institute, April, 2000). Being thus informed of this widespread problem, the plaintiffs' consumer class action bar would have scrambled to file these cases long ago but for the obvious difficulties, the expense and the myriad barriers to success presented by these difficult and vigorously defended cases. Defense counsel were highly competent, well funded attorneys from excellent firms who worked diligently to defend their client.

For class counsel, agreeing to litigate this case was a conscious decision to take substantial risk in what was certain to be a highly contested case without significant likelihood of success. That decision having been made, the actual litigation of this case

and the development of this settlement structure required diligence, dedication, creativity and attention to detail. The results here reflect a level of skill and a substantial investment of attorney and staff time that clearly supports the Proposed Fee.

### g.  Customary Fee for Similar Class Actions

As noted above, the Proposed Fee is within a reasonable range of common fund awards to counsel in other class actions in the Eleventh Circuit. *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) (33%); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323 (S.D. Fla. 2001) *(25%); Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685 (N.D. Ga. 2001) *(20%); Ressler v. Jacobson,* 149 F.R.D. 651 (M.D. Fla. 1992) (30%). Indeed, around the country, even large recoveries have resulted in payment of substantial attorneys fees. *See In re Linerboard Antitrust Litig.,* 2004 WL 1221350 (E.D. Pa. June 2, 2004) (awarding 30% of $202 million); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1337 (S.D. Fla. 2001) (approving 25% fee on benefit of $110 million); *see also In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 166,195-97 (E.D. Pa. 2000) (30% of $111 million); *In re Thirteen Appeals Arising Out of San Juan DuPont Plaza Hotel Fire Litig., 56* F.3d 295 (1St Cir. 1995); (30% of $220 million); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 1994 WL 675265 (C.D. Cal. Aug. 11, 1994) (30% of $140 million); *In re Combustion, Inc.,* 968 F. Supp. 1116 (W.D. La. 1997) (36% of $125 million); *In re Salomon Bros. Treasury Litig.,* 1994 WL 62852 (S.D.N.Y. Feb. 22, 1994) (25% of $100 million). The Proposed Fee in this case is within the range of other fees and is certainly reasonable.

### h.  Skill Required To Perform the Legal Service Properly

Information on Butler, Wooten & Fryhofer, LLP is included in Mr. Wooten's affidavit filed herewith and available at www.butlerwooten.com. Clearly, Plaintiff

Perkins retained counsel who are experienced and who have a successful history of handling complex litigation, including the prosecution of consumer class actions against credit insurance companies. Co-Class Counsel James E. Butler, Jr. and Ben B. Philips vigorously and successfully litigated this case and the *Gross* case on several levels which ultimately forced settlement negotiations that finally resulted in the resolution of this case. The time and resources Class Counsel expended were appropriate in light of the tenacious and well funded defense they faced and the excellent results they achieved for the class.

### i.   The Time and Labor Required

The present unearned premiums litigation against ANICO has been ongoing for approximately four years.  As the Court's docket reveals, this case has required a tremendous amount of work from Class Counsel in briefing alone.  The discovery work, though much of which is not reflected in the docket, also required intensive and time-consuming work over the course of the litigation, as did the preparation for, and attendance at, the hearings and extensive settlement negotiations.  *See generally*, Exh. A, , Wooten Aff.

Still more work will be required from Class Counsel should the Court approve this settlement, as the procedure for getting the unearned premium refunds to each Class Member requires on-going monitoring and oversight as does ANICO's additional agreement to provide prospective relief.  Doing extensive work in this case were Class Counsel James E. Butler, Jr. and Ben B. Philips and members of their law firms – Butler, Wooten & Fryhofer, LLP and Philips-Branch, both excellent firms with long histories of successfully handling complex and difficult cases.  In addition, Plaintiff was well

represented by the law firms of the Law Offices of Charles Gower, Hatcher, Stubbs, Land, Hollis & Rothschild, Oates & Courville and the Ratliff Law Firm, PLLC.  All of these law firms and the lawyers who participated in this case on behalf of the Class are highly skilled and effective in researching, working and preparing a case such as this for trial.  But for that high degree of skill and experience, this case would have languished and not been successful.  The thousands of hours of work that these lawyers and their dedicated staff put in this case to research, prepare, discover and argue successfully all of the various motions and appeals provided the impetus to force ANICO to come to the table to resolve this matter on terms favorable to the class.  *See* Exh. A, Wooten Aff.

Of course, a calculation of the hours worked on a case, alone, is not an indication of the value of the service rendered by counsel to the class:

> This method of compensation - - which equates professional services to those of laborers and mechanics - frequently has little or no relationship to the value of the services performed in anything but the most routine work. A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort.  Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation.

*Foster v. Boise-Cascade, Inc.,* 577 F.2d 335, 337 n.1 (5th Cir. 1978) (Vance, J., partial dissent on other grounds).  Here, Class Counsel has shown particular innovation and skill in structuring a new settlement that will deliver 125% of the premium relief that would have been afforded to the eligible class members.  Constructing a simple and efficient settlement structure after protracted and fierce litigation took particular skill, tremendous resources and a substantial dedication of attorneys and staff time and effort.  The harmed class members would not have received the benefits available under the settlement if not for the high level of respect for the talents and tenacity of Class Counsel and the law

firms assisting them.

Counsel will continue to provide on-going services to the class after this Court's approval of the settlement. *See* Exh. A, Wooten Aff.  These responsibilities will include providing information and assistance to class members who contact the claims administrator or Class Counsel.  Class Counsel also anticipates being involved in monitoring ANICO's compliance with the prospective relief secured in the settlement agreement.  Counsel will provide additional services to the class by continuing to oversee and monitor the administration of the settlement, including the appropriate use of any unclaimed funds.  The time and labor involved in this action justify the Proposed Fee.

### j.  Time Required to Reach A Settlement

Ultimately, it took many arduous and lengthy settlement meetings, numerous drafts and re-drafts and revisions by both sides to multiple sets of proposed documents and numerous telephone conferences, before this case could be settled.  Experienced counsel on both sides worked long and hard, engaging in serious discussions and follow-up communications that were characterized by the same measure of vigorous advocacy that marked the litigation product of both parties.  Importantly, though, the discussions were conducted in an arms-length, professional manner and the discussions ultimately did result in an innovative settlement that is very favorable to the class members.

The work, the result and the overall settlement structure crafted here supports the award requested.  The parties constructed a settlement claims procedure that allows Class Members to learn about this Action and receive their proportionate share of unearned premiums due without any further action on their part.  Conceiving, developing and finally reaching agreement with ANICO on this innovative approach took many years of

hard work, and creative and critical thinking.

In sum, the creation of an extensive settlement structure and the electronic data analyses performed in connection with that structure combine to make this case novel and difficult and provide further support for a reasonable fee request. The significant time required to negotiate this settlement is largely a product of Class Counsel developing an approach to resolving a complicated class action and their efforts convincing ANICO that it had to commit to the Settlement Agreement they proposed in order to bring this litigation to a close. This factor also supports the approval of the Proposed Fee.

### k. Reaction of the Class

Finally, the reaction of the class also confirms that the Proposed Fee of 25% of the total recovery for all identified Class Members is reasonable and warrants approval. Only nine (9) Class Members have opted out of the settlement, and **<u>no</u>** formal objections to the settlement were filed with the Court, even though individual notice packages were mailed by first-class mail to the 94,415 Class Members.[5] *See* Jt. Mot. for Final Approval at 8; *see also* Exh. E, , Delgado Aff. at 5. The detailed notice advised Class Members that Class Counsel would apply for an award of up to 25% of the recovery for attorney's fees, in addition to Class Counsel's claim for expenses related to investigating facts, litigating the case, and negotiating the Settlement, and that class members could object to the fee application. Yet, no objections to the settlement or to attorney's fees were received. The lack of any objections is itself important evidence that the requested fees

---

[5] No objections to the Settlement were formally filed with this Court, pursuant to the terms of the Court's Preliminary Order. *See* 5/16/07 Order [Pacer Doc. No. 103] at 8-10.

are fair and reasonable. *See e.g., Elkins v. Equitable Life Ins. of Iowa,* 1998 WL 133741,

* 36 (M.D. Fla. Jan. 27, 1998); *Ressler v. Jacobson,* 149 F.R.D. at 656 (noting the lack of

objections is "strong evidence of the propriety and acceptability of the fee request").

This factor also supports the request for an award of fees and expenses.

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy.   In fact, the lack of

objections may well evidence the fairness of the settlement."   *Maley v. Del Global Techs.*

*Corp.*, 186 F.Supp. 2d 358, 362 (S.D.N.Y. 2002) (citations omitted).   When few class

members object to the settlement, the court may infer that the settlement is fair.   *See*, *e.g.*,

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *City of Detroit v.*

*Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).    The inference is particularly

appropriate if the number of objectors is dwarfed by the total size of the class.   *See In re*

*ASPH/Norstar Securities Litigation*, 935 F. Supp. 99, 106 (D.R.I. 1996) ("[s]uch a small

number of objectors should not interfere with the approval of an otherwise fair and

reasonable settlement agreement").

All of the *Johnson* factors favor approval of the Proposed Fee.   Accordingly,

counsel respectfully suggests that the Court should approve this Petition.   Indeed, the

Proposed Fee also avoids the prospect of litigation over a fee award and provides for a

fair and reasonable fee for the results obtained, and as such comports with the Supreme

Court's directive on fee issues:   "A request for attorneys' fees should not result in a

second major litigation.   Ideally, of course, litigants will settle the amount of a fee."

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (emphasis added).   *See also*, *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) (encouraging both

sides to "understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees").

## III.    THE CLASS REPRESENTATIVE FEES ARE FAIR AND REASONABLE.

Class Counsel seeks approval of a class representative incentive award to Mr. Paul Perkins and Mr. Bailey Gross of $15,000 each, paid for by ANICO.  These individuals were willing to step up and help themselves and, more importantly, help many others by volunteering to serve as the class representative without any assurance whatsoever of compensation for doing so.[6]  Both individuals repeatedly met with, and communicated with, Class Counsel and remained actively involved during the discovery and litigation phases, appeal, and the settlement aspects of this case.  They participated in the case for four years and regularly kept up-to-date through frequent communications with Class Counsel on the status of this litigation and, ultimately, in the decision to negotiate a favorable settlement and to recommend this settlement to the Court.  Because ANICO has agreed to pay class representative fees separately from the recovery to the Class, it cannot be argued that this fee in any way detracts from the total recovery on behalf of the remainder of the Class.  It is appropriate to permit modest payments in view of "the additional time expended and inconvenience suffered by [the Plaintiff]."  *Bryan v. Pittsburgh Plate Glass Co.*, 59 F.R.D. 616 (W. D. Pa.1973), *aff'd* 497 F.2d 799 (3d Cir. 1974) ($17,500 award to class representatives);  see also, *GMAC Mtge. Corp. v. Stapleton*, 236 Ill.App.3d 486, 603 N.E.2d 767 (1st Dist. 1992);  *Kazanas v. Millcom,*

_____

[6] Bailey Gross served and continues to serve as a class representative in the *Gross v. ANICO* action pending in Muscogee County Superior Court.  This Action is still pending, and Mr. Gross was specifically contemplated as a potential class representative in the Settlement Agreement.  Mr. Gross's general and continuing efforts to reunite the Class Members with their unearned premium refunds warrant a fee commensurate with that proposed for Plaintiff Perkins.  *See* Exh. A, Wooten Aff.

*Inc.*, CCH Fed.Sec.L.Rptr. 97,255 (S.D.N.Y. 1992); *Harris v. Pernsley*, 654 F.Supp.

1042, 1053 (E.D.Pa. 1987); *Bell v. Automobile Club*, 34 FEP Cas. 3, 7 (E.D.Mich. 1980)

("there is something to be said for rewarding those drivers who protest and help to bring

rights to a group of employees who have the victims of discrimination"); *See generally*

C. Krislov, *Scrutiny of the Bounty: Incentive Awards for Plaintiff's in Class Litigation*, 78

Ill. B.J. 286 (June 1990).  Also, consider the language in *Ingram v. Coca-Cola Co.*, 2001

U.S. Dist. LEXIS 8414 (N.D. Ga., June 7, 2001):

> Courts routinely approve incentive awards to compensate named plaintiffs for
> the services they provided and the risks they incurred during the course of the
> class action litigation."  *In Re Southern Ohio Correctional Facility*, 175
> F.R.D. 270, 272 (S.D. Ohio 1997) (citing cases). Such awards are justified
> when the class representatives expend considerable time and effort on the
> case, especially by advising counsel, or when the representatives risk
> retaliation as a result of their participation.  *Id.*, at 273; *See also*, *In re Lease
> Oil Antitrust Lit.*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (recognizing that
> class representatives were entitled to additional compensation for their time
> and effort).

*Id.*, at *29 (awarding a $300,000 incentive fee award to the named plaintiff in a

discrimination case).

Accordingly, the requested class representative award of $15,000 each to Mr.

Perkins and Mr. Gross is fair and reasonable and should be approved.

## IV.    EXPENSES AND COSTS OF SETTLEMENT ADMINISTRATION

Class Counsel in this case have incurred and advanced all of the funds necessary

for the case and litigation expenses necessary to prosecute this class action for four years.

This Court knows of the highly-contested nature of this litigation.  Class Counsel have

already incurred substantial case and litigation expenses.  *See* Exh. A, Wooten Aff.; *see*

*also* Settlement Agreement [Pacer Doc. No. 93-2] at ¶¶ 37, 52.

## CONCLUSION

Class Counsel has secured for the members of this class a substantial benefit in a difficult, contentious and highly litigated case against a sizable corporation with significant assets and against prominent and successful defense counsel.  That benefit is made even more notable by the fact that Class Counsel negotiated an innovative, streamlined and objective process for significant numbers of class members to be able to obtain that relief.  The requested attorneys' fees of 25% of the recovery for all identified Class Members, the request for case expenses advanced to date, and the requested Class Representative fee are eminently reasonable in light of the results obtained in this case and should be approved by the Court.

Respectfully submitted, this 7th day of January, 2009.

BUTLER, WOOTEN & FRYHOFER, LLP

By:      /s/ Joel O. Wooten
JAMES E. BUTLER, JR.
Georgia Bar No: 099625
JOEL O. WOOTEN
Georgia Bar No: 776350
P.O. Box 2766
Columbus, GA 31902
(706) 322-1990

PHILIPS-BRANCH
BEN B. PHILIPS
Georgia Bar No: 575550
P.O. Box 2808
Columbus, GA 31902

CHARLES A. GOWER, P.C.
CHARLES A. GOWER
Georgia Bar No: 303500
P.O. Box 5509
Columbus, GA 31906
(706) 324-5685

OATES & COURVILLE
SAMUEL W. OATES, JR.
Georgia Bar No: 548250
P.O. Box 20
Columbus, GA  31902
(706) 327-8000

HATCHER, STUBBS, LAND, HOLLIS
   & ROTHSCHILD, L.L.P.
GREGORY S. ELLINGTON
Georgia Bar No: 246863
P.O. Box 2707
Columbus, GA 31902
(706) 324-0201