## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| **PAUL PERKINS, Individually and on Behalf of a Class of all Persons Similarly Situated** | § § § § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.: 3:05-CV-100 (CDL)** |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN NATIONAL INSURANCE COMPANY, a Foreign Corporation** | § § § | |
| | § | |
| **Defendant.** | § | |

### JOINT MOTION FOR FINAL CERTIFICATION OF A SETTLEMENT CLASS, FINAL APPROVAL OF CLASS SETTLEMENT, AND REQUEST FOR PERMANENT INJUNCTION AND FINAL DISMISSAL

TO THE HONORABLE JUDGE LAND:

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), the parties file this joint motion seeking (i) final certification of a settlement class, (ii) final approval of a class settlement, (iii) a permanent injunction enjoining claims settled herein against American National Insurance Company by any Class Members; and (iv) final dismissal of this Case against American National Insurance Company with prejudice. In support hereof, the parties would respectfully show the following:

### I. PRELIMINARY STATEMENT

The settlement class should be certified and final approval is warranted because, (i) Rules 23(a) and 23(b)(3) are met, (ii) the standards for approving a class action settlement are satisfied, and (iii) the Class Members have received the best practicable notice pursuant to the settlement agreement between the parties and this Court's directives.

Plaintiff filed this case as a class action on October 7, 2005 alleging that ANICO failed to refund the unearned portion of his credit life and disability insurance premium. On or about May of 2007, the parties to this case reached an agreement to resolve this lawsuit on behalf of the entire class. After a hearing, this Court preliminarily certified the class for settlement purposes, preliminarily approved the class settlement, appointed class counsel, appointed a settlement administrator, approved the process of obtaining class member information and approved the process of directing notice to the class members. *See Generally* **Court Docket Instr. 103**, (*Order Preliminarily Certifying A Class For Settlement Purposes*)(hereinafter the "Preliminary Order"). Plaintiff, ANICO, and the settlement administrator have established the list of class members and provided notice to the class members in accordance with their agreements and this Court's direction. Accordingly, the parties now request the Court hold its fairness hearing and finally certify the class for settlement purposes and approve the settlement as fair, reasonable and adequate.

## II. BACKGROUND FACTS SUPPORTING CERTIFICATION <u>AND FINAL APPROVAL</u>

A.      **Specific Allegations.**

Plaintiff, Paul Perkins, alleges in his Complaint that on September 4, 2001 he purchased single premium credit life and credit accident and disability insurance from Defendant, ANICO, in connection with the financed purchase of a 2002 Chevrolet Avalanche. Plaintiff further alleges that he prepaid the loan obligation on November 17, 2003, entitling him to a refund of credit insurance premiums collected by ANICO. He sued to recover those unearned premiums in this Action. Finally, Plaintiff alleges that he is representative of a class of persons, and seeks certification of a nationwide class of all similarly situated current and former owners of ANICO credit insurance policies.

ANICO expressly denies any wrongdoing alleged by the Plaintiff and does not admit nor concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against it in the Action.  Furthermore, ANICO alleges that it has numerous defenses to the allegations made by Plaintiff, including factual and legal objections to certification of this case as a class action for purposes of trial.  Although ANICO does not believe the Plaintiff's case may be certified as a class action for trial purposes under Federal Rule of Civil Procedure 23, ANICO does not contend that certification of a class for settlement purposes presents the same problems.

**B.    The Class Defined.**

This Court preliminarily certified, and the parties seek final approval of, the following settlement class under Rule 23(a), and (b)(3):

> "All persons who purchased single premium credit life and/or credit disability insurance issued by ANICO in the United States whose policies (a) were in effect and entered into ANICO's LOGIC system[1] at any time between October 7, 1999, and the date that the Court enters an Order Preliminarily Approving the Class Action Settlement of this Action ("Preliminary Approval Order"); **and** (b) whose insured indebtedness was extinguished prior to its scheduled termination while the insurance was in effect; **and** (c) who have not received a refund of any unearned premium."

---

[1]    When used herein, or in any document related to this Action, "entered into ANICO's LOGIC system" shall refer to that computer processing system used by ANICO to administer credit life and credit disability insurance policies as sold by all its various producers.  ANICO expressly represents and warrants that every credit life and credit disability insurance policy sold by its various producers are in fact entered into the LOGIC system.

Excluded from the Class are those persons who received a refund of unearned premium:
(1) in the ordinary course of ANICO's business; **or** (2) pursuant to the final executed
Assurance of Voluntary Compliance ("AVC") with the Attorney General of the State of
Texas.  Final approval is appropriate in this case.

## C.    The Settlement.

After almost two years of litigating this case through numerous filings, hearings,
discovery, document review and arms-length negotiations between Plaintiff's and ANICO's
counsel, Plaintiff's counsel thought it reasonable to resolve this case on behalf of the class.

Exhibit A, (*Butler Affidavit*), at 2.   The proposed settlement contemplated by the
Settlement Agreement will result in the identification of certain persons insured by ANICO
under credit life and/or disability policies who paid off the loan associated with the insurance
policies prior to the termination of their term, but who have not received a refund of unearned
premium.  Those persons, who are members of the proposed settlement class and who have not
opted out from the class, will be eligible to receive 125% of the amount of the unearned
premium, reduced only by the attorney's fees approved by the Court.[2]

Based on their discovery and independent investigation, Plaintiff and Plaintiff's Counsel
determined that the settlement was fair, reasonable, and adequate and in the best interests of the
proposed class. Exhibit A, (*Butler Affidavit*), at 2.

## D.    Prior Findings by the Court.

The Court reviewed the Joint Motion of the parties requesting preliminary certification
for settlement purposes only.  The Court found as follows:

> "(a) the Settlement Class certified herein numbers more than one-thousand
> persons, and that joinder of all such persons would be impracticable, (b) there are
> issues of law and fact that are common to the class, and that those issues

---

[2] The total recovery for all 94,415 identified class members totals $27,565,557.19. *See* Exhibit A,
(*Butler Affidavit*). at 2, ¶ 7; *see also* Exhibit E, *(Delgado* Affidavit) at 2.

> predominate over individual questions, (c) a class action on behalf of the certified class is superior to other available means of adjudicating this dispute, and (d) as set forth in paragraph 5 below, Plaintiff's claims are typical of the class and he and Settlement Class Counsel are adequate representatives of the class."

*Preliminary Order*, at 2. Nothing has changed to alter the Court's findings that class certification for settlement purposes is warranted in this case.

### E.    ANICO's Administration of the Settlement and Notice.

Subsequent to the Court's preliminary findings and pursuant to the settlement agreement, ANICO began its effort to discover potential class members and create the class list. Each of the steps involved communications with ANICO, its counsel and Rust Consulting, Inc. as settlement administrator. *See* Exhibit B, (*Rust Consulting Affidavit*) at 2. All modifications of procedures within the Settlement Agreement and changes to the dates were done with the input and approval of Class Counsel. Rust Consulting, Inc. provided suggestions and oversaw the methods of pursuing information on ANICO's paperwork, from dealerships and agents, from lenders and from individual policyholders. *Id*. It is Rust Consulting's belief that ANICO completed the information gathering process in compliance with the Settlement Agreement, and that ANICO appropriately used that information to create the Class List. *Id*.

### i. ANICO brings in people to review documents

ANICO began a five (5) month internal document review in May of 2007. Exhibit C, (*Russo Affidavit*), at 2. From its own documents, the company compiled all information relating to any of the following: (1) the name, address, or personal information on the insured; (2) name, address of the dealership or insurance agency involved in the sale of the policy; and (3) the name and address of the financial institutions that financed the loans covered by the credit or disability policy. *Id*. ANICO then requested files from outside agencies and reviewed those documents. *Id*. The subject

of the paperwork review included seeking records on 3.5 million policies. *Id*.  To complete the review timely, ANICO utilized approximately fifty (50) people working forty-hour weeks between May of 2007 and October of 2007. *Id*.  ANICO paid all of the expenses of employing, training and officing these individuals. *Id*.

### ii. obtaining information from dealerships and agents

In October of 2007, ANICO began sending letters directly to its dealerships and agents in connection with potential class members' credit and disability policies. *Id*.  The letters notified these companies that ANICO needed updated information on their lists of customers relating to their addresses, information on any termination date for underlying loans and the names of lenders involved in the credit transactions. *Id*.  ANICO identified roughly 3200 dealerships and agents that received letters as a part of this phase of ANICO's information gathering efforts. *Id*. at 3.  At the same time, ANICO created a website to provide information to the dealerships and agents about the lawsuit and a webpage describing how to provide information to ANICO. *Id*.  The company also updated a website through which the dealerships and agents could provide requested information to ANICO electronically. *Id*.  ANICO also set up a phone bank and trained and utilized the staff from the record-review phase of the project to be available to answer phone calls from dealerships and agents if they had questions or needed assistance in providing information. *Id*.  ANICO's counsel sent a follow-up second letter to these dealership and agents in approximately November of 2007 again seeking the requested information. *Id*.  ANICO's counsel remained involved in the information-gathering process where the dealership or agency had a question that was legal in nature. *Id*.  ANICO's collection process from dealerships and agents formally continued

approximately three (3) months into March of 2008. *Id*. But, ANICO continued to gather information from dealerships and lenders through July of 2008. *Id*

### iii. obtaining information from third-party lenders

In March of 2008, ANICO completed the process of linking its policy lists to specific lenders and began sending subpoenas to lending institutions seeking information on its insureds and specifically seeking any termination dates for these customers. *Id*. To facilitate this process, ANICO (1) created spreadsheets for the lenders to use to search their own information and (2) set up a website specifically for the lenders to use to provide information back to ANICO. *Id*. ANICO sent subpoenas to over 750 lenders involved with loans for approximately 717,000 policies. *Id*. at 4. ANICO, at ANICO's expense, also began seeking information on its customers through Accurint, a national personal information search firm, so that ANICO could provide the most current and accurate information to the lenders. *Id*. ANICO allowed the lenders to utilize the information website to provide them information about the *Perkins* lawsuit and settlement. *Id*. While it sought information from lenders, ANICO continued using dedicated staff members to respond to lender phone calls into its phone banks. *Id*. Additionally, ANICO's attorneys dealt with the legal issues that arose as a result of the subpoena requests, including responding to objections and preparing motions to compel and any requisite protective orders. *Id*. As anticipated by the company, ANICO expended over $140,000.00 to reimburse lenders for expenses in searching the lender records. *Id*.

### iv. over 900,000 letters directly to insureds

In its continuing effort to collect information on loan termination dates, in July of 2008 ANICO sent over 900,000 letters directly to its insureds. *Id*. As previously

explained above, prior to sending any of these letters ANICO sought and obtained updated name and address information from Accurint, a national personal information database. *Id*. Again, ANICO maintained a phone bank for phone inquiries made as a result of these letters. *Id*. ANICO maintained its staff to go through the paper responses received from any insured that provided information on their loan termination date. *Id*. ANICO collected all of the information provided by insureds and compared it to the policy information within ANICO's database to determine whether or not the individual might be a class member. *Id*. Rust Consulting also audited the results of ANICO's insured documentation effort and found less than 1% error. Exhibit B, (*Rust Consulting Affidavit*), at 2. During the four (4) months ANICO sought information from insureds, ANICO received over 120,000 responses and received 37,000 phone calls related to the class settlement. Exhibit C, (*Russo Affidavit*), at 4. Clearly, ANICO customers were getting the message.

### v. ANICO identified and sent formal class notices to over 94,415 class members

ANICO used the information it received as a result of its pursuits and matched it with its own records to determine a final class list. Exhibit E, (*Delgado Affidavit*), at 2. The number of policies within the class was 94,415 and the total amount of refunds that would be due on these policies was $22,052,445.75. *Id*. ANICO sent the class list with names and address to a mailing company to have them mail the class notice to each of the class members. *Id*. As of November 29, 2008 the mail company informed ANICO that notices had been mailed by first class mail for each of the policies making up the class list. *Id*. The notice is substantially in the form of the document attached to the Settlement Agreement, as filed with the Court in May of 2007. *See* **Docket Instr. # 100** (*Amended Proposed Form Class Notice*).

ANICO continued to process the responses to the notices. Since the date the notices were mailed, ANICO staff fielded over 2,100 phone calls from insureds related to the notices. *Id.* Few people have decided not to take advantage or complain of the Settlement Agreement. As of the drafting of this Motion, ANICO has received and processed only nine (9) requests to opt out of the settlement class and has not received a single objection by letter. Exhibit E, (*Delgado Affidavit*), at 2. As of January 5, 2009, ANICO also received 15,913 returned letters. *Id.* ANICO rechecked and re-mailed 3,459 of these letters because the return provided a forwarding address. *Id.* ANICO also received 137 letters returned because the person was "temporarily away" from their mailing address. *Id.* The list of Class Members who have opted out of the Class Settlement are attached hereto as Exhibit D. As of the time this Motion, no objections had been formally filed with the Court. ANICO continued to process potential opt outs, objections and exceptions through December 31, 2008. *Id.* The class notice timely mailed to the Class Members provides them required information related to the Class Settlement. *See generally*, Exhibit F, (*Class Notice*).

In sum, ANICO spent a great deal of time administering this settlement. The data collection to achieve the settlement alone took place over eighteen (18) months.

### III. ARGUMENT AND AUTHORITIES

A.    **Final Approval Of The Settlement Class Is Appropriate Under Rule 23(a) and 23(b)(3).[3]**

This Court preliminarily certified this case for settlement purposes on May 16, 2007. In determining whether certification of a class for purposes of settlement is appropriate for final approval, the Court will again look at whether the requisite elements of numerosity, commonality, typicality, adequacy of representation, and superiority are established. *Amchem*

---

[3]    ANICO does not join in the arguments presented below, but has agreed not to oppose certification of a class for settlement purposes only.

*Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).  The settlement and its terms are in fact relevant to the determination that the action may be certified as a class action. *Amchem, 521 U.S. at 619-20.* Each of the Rule 23 elements is satisfied in this case.

For a class action to be certified, the members of the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  In this case, there are approximately 94,000 Class Members. Exhibit C, (*Russo Affidavit*), at 5.  There is no single, fixed number of Class Members required to meet the numerosity requirement. *See Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S. Ct. 274, 93 L. Ed. 2d 250 (1986).  Most courts do not have a set class size requirement *See e.g., Upshaw v. Georgia Catalog Sales, Inc.,* 206 F.R.D. 694, 698 (M.D. Ga. 2002).  Nevertheless, class sizes of more than 40 generally satisfy the numerosity requirement. *Am. Cast Iron Pipe Co.,* 784 F.2d at 1553.  There are over 94,000 class members identified in this case; as such, numerosity is satisfied.

Commonality exists where claims of the prospective class present common questions of law or fact. *See Coleman v. Cannon Oil Co., 141 F.R.D. 516, 521 (M.D. Ala. 1992).* Common questions are those that arise from a common nucleus of operative fact. *Haywood v. Barnes, 109 F.R.D. 568, 577 (E.D.N.C. 1986).*  At its most basic level, the common facts as alleged in this case are that ANICO had a contractual and/or legal obligation to provide unearned premium refunds to its insureds, but failed to do so.  Additional common operative facts are the relative closeness in policy terms and whether or not notice of policy termination is required.  The operative facts in this case share a common nucleus.

Typicality is satisfied where the named plaintiff's claims are sufficiently similar to those of the absent Class Members to conclude that the representative will protect the interests of the class and that there are no antagonistic interests between the representative and the proposed

class. *See Coleman, 141 F.R.D. at 522*.  Like the Class Members, Perkins purchased credit life and disability insurance from ANICO to protect his automobile loan.  Like the Class Members, Perkins claims to have never received a refund of unearned premium on that policy.  Each of these facts appears to be typical of other Class Members.

Adequacy of representation merges with commonality and typicality to guide the Court in determining whether maintenance of the action as a class action is economical and whether the interests of the absent Class Members will be fairly and adequately protected.  There should be no antagonism between the interests of the representative plaintiff and the Class Members, and counsel must be qualified to represent the class.  Based upon their representation of the class in this case and their successful representation of plaintiffs in similar litigation, Class Counsel have provided capable and adequate representation for the Settlement Class.  Plaintiff is committed to prosecuting this Action and retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of other members of the Settlement Class, and Plaintiff has the same interests as the other members of the Settlement Class.  Accordingly, this Court should find that Perkins is an adequate class representative, and his counsel is also adequate.

"To qualify for certification under *Rule 23(b)(3)*, a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Amchem, 521 U.S. at 615*.  In the settlement context of this case, there are no disparate questions undermining class cohesion.[4]  The Class Members claim to have been harmed by a common course of conduct—ANICO's

_____

[4] Again, that a settlement is before the Court means that potential predominance obstacles, which might be problematic in a contemplated trial, are not present at this juncture. In *Amchem,* of course, the *settlement* and its structure created class conflict--the presently injured plaintiffs were effectively fighting the future claimants for the same "pot" of money. No such competing interests are present among Class Members in this case. All similarly situated Class Members get the same relief.

alleged failure to seek out early policy terminations and refund any unearned premium. Indeed, Plaintiffs allege that the Class Members all suffered harms in the same manner. These allegations unite the Class, making it economical to settle the claims in one suit. *See Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S. Ct. 57, 50 L. Ed. 2d 75 (1976).

Superiority questions whether a single resolution of the claims of Class Members by settling the case is superior to individual litigation of the claims. "In many respects, the predominance analysis . . . has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004), *cert. denied*, 543 U.S. 1081 (2005). The concept of "negative-value" suits is instructive here. A class action solves the problem of claimants not bringing many paltry and valueless lawsuits by aggregating the recoveries of many class members. *Id.* at 1270-71. In this case, the average recovery for any given class member is $233.57. *See* Exhibit C, (*Russo Affidavit*), at 5. Without resolving this case as a class, many of the class members would have no incentive to pursue their own claims. As further proof of superiority, the class action settlement will prevent wasteful, duplicative actions that will raise the same issues and questions of law, grant plaintiffs a definite recovery, and prevent each settling plaintiff having to pursue an individual action and risk receiving no recovery. *See e.g.*, *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2007 U.S. Dist. LEXIS 52589, 2007 WL 2119022 (N.D. Ga. Jul. 20, 2007). As with the other requisite elements, the superiority requirement is satisfied in this case. Accordingly, for purposes of this settlement the prerequisites to class action certification pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been satisfied.

**B.     The Settlement Agreement Should be Finally Approved as Fair, Reasonable and Adequate for the Class Under the Federal Rule 23(e) Standard.**

**1.     The Legal Standard for Final Approval of Class Settlement**

Plaintiff asks the Court to finally approve the settlement agreement as fair, reasonable and adequate in accordance with Federal Rule of Civil Procedure 23(e).  Courts have identified several factors as relevant to our review of whether a class settlement's terms are fair, reasonable and adequate, including the:

> (1)   likelihood of success at trial;
> (2)   range of possible recovery;
> (3)   point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable;
> (4)   complexity, expense and duration of litigation;
> (5)   substance and amount of opposition to the settlement; and
> (6)   stage of proceedings at which the settlement was achieved.

*Sterling v. Stewart*, 158 F.3d 1199, 1203 n.6 (11th Cir. 1998).  The Court's conclusion that a class settlement is fair will not be disturbed absent a clear showing of abuse of discretion. *Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984)*.  Moreover, the Court's judgment may also be informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement. *Id*.  It is under this standard that the Class Settlement should be judged.

**2.     The Fact That The Class Members Are Practically Being Made Whole, Despite Relevant Defenses, Cuts Largely In Favor of Final Approval.**

The first three criteria for this Court to examine, if not all, should be considered in light of the fact that the Class Members in this case are going to obtain near full recovery without shouldering the normal expenses and costs associated with litigation. *See Wal-Mart Stores, Inc. v. Visa, U.S.A., Inc*., 396 F.3d 96, 119 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044.

In this case, the essence of Plaintiff's several theories of recovery and damages is that Plaintiff is damaged in the amount of unearned premiums. Docket Instr. 84 (*Brief In Support of*

*Motion for Class Certification*), at 1.  Defendant asserts several defenses to the claims including the fact that notice is required under the policy language and that Plaintiff's are estopped from asserting claims to premiums due to their own failure to provide Defendant any notice that an unearned premium would be due. Docket Instr. 2 (the "*Answer*"), at 6.  Additionally, at the time of settlement there was no requirement that ANICO seek out potential class members to determine where an unearned premium would be due.  As part of the Settlement Agreement, ANICO agreed to affirmatively search through its own records, affirmatively obtain records from dealerships and lenders across the country and, finally, go to its insureds to determine who might be due a refund. Exhibit A, (*Butler Affidavit*), at 2.  ANICO was to seek the information without expense to the class members. *Id.*

Plaintiff's claim was that ANICO owed unearned premiums refunds to customers. *Id.* The settlement also provides a 125% recovery of the entire unearned premium that might be due for any class member. *Id.*  ANICO calculated the refund amount to be $22,052,445.75 and the total settlement fund in this case is $27,565,557.19, without even considering the change in practices that the settlement accomplished. *Id.*; Exhibit C, (*Russo Affidavit*), at 5.  ANICO has also agreed to the following prospective relief: (1) to send a letter to its customers thirty days before scheduled loan termination to remind the customer of their right to a refund of unearned premium in the event of an early loan termination; (2) to annually send a letter to remind its customers of their right to a refund of unearned premium in the event of an early loan termination; and (3) to issue a clear and succinct advisory to its producers to notify them of their obligation to notify ANICO of any early loan terminations. *Id.*  Based on all of the relief provided in the settlement with ANICO, the recovery pursuant to the settlement agreement is at the top of the range of potential recovery for any given class member. *Id.*

- 14 -

**3. Sufficient Discovery Occurred Before Settlement And There Is Very Little Opposition.**

While the 100% recovery obtained in this case certainly cuts toward final approval, it is also notable that this case was resolved after sufficient discovery had occurred allowing Class Counsel to appropriately determine the likelihood of recovery, range of recovery and general merits of the claims. Exhibit A, (*Butler Affidavit*), at 2.  Plaintiff's obtained interrogatory and document production responses from ANICO in this case.  *Id*.  Moreover, Plaintiff also obtained discovery relevant in this case from outside sources, including the related case of *Gross v. American National Insurance Company,* Case No. SU-05-CV-569-6 (Superior Court, Muscogee County, Georgia). *Id*. at 3.  Information obtained from related or parallel proceedings is clearly appropriate for this Court to consider in determining Plaintiff's grasp of the merits of this case. *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 180 (5th Cir. 1979); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2007 U.S. Dist. LEXIS 52589, 2007 WL 2119022 (N.D. Ga. Jul. 20, 2007).  Plaintiff's counsel actually moved for class certification. *See* Docket Instr. 84 (*Brief In Support of Motion for Class Certification*).  Counsel clearly demonstrated access to sufficient documentation in this case and attached such documentation (including an analysis of ANICO form policies, policy termination provisions and an ANICO deposition), to its motion. *Id*. Plaintiff's counsel has demonstrated access to sufficient information regarding the facts of their case.  Moreover, such extensive involvement and understanding provided by Plaintiff's counsel in its Motion for Class Certification justifies the conclusion that the settlement in this case is not the product of collusion at the expense of the settlement class. *See e.g.*, *Bennett v. Behring Corp.*, 737 F.2d at 986-87.  Instead, the class settlement is a fair, reasonable and adequate settlement.

Finally, there has been very little opposition to the proposed settlement.  As of the filing of this Motion, ANICO had only received nine (9) opt outs and has received no objections to the settlement.  Exhibit E**,** *(Delgado Affidavit), at 2.*  There were no filings made with the Court.

The miniscule number of individuals who opted out and objected, considering that there were over 90,000 settlement packets mailed, certainly favors final approval of the settlement as fair, reasonable and adequate.

There is little question that the settlement meets the fair, reasonable and adequate standard of Rule 23(e).  First, the settlement is the product of arm's length negotiations between the parties. Exhibit A, (*Butler Affidavit*), at 3.  Second, the parties have conducted sufficient discovery to allow them to understand the factual and legal obstacles to each of them prevailing on the merits. *Id*.  Third, given that the parties have conducted discovery, each has ample information to evaluate the case and the appropriateness of the proposed settlement. *Id*.  Fourth, Plaintiff and Plaintiff's Counsel believe that the settlement is well within the range of possible recovery to the Settlement Class if this case were tried. *Id*.

**C.    The Class Notice Should Be Approved as Satisfying Due Process**.

Rule 23 and due process concerns require that before a class settlement may receive final approval, class members must be given notice of the proposed settlement using "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   FED. R. CIV. P. 23(c)(2); *see also In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534, 538  (N.D. Ga. 1992) (notice should "be given in a manner reasonably calculated under all the circumstances to apprise interested parties of the pending action and to afford them an opportunity to present their objections").  As discussed below, the class notice, a copy of which is attached hereto as Exhibit F satisfies the requirements of Rule 23 and due process.

**1.    Form of Notice.**

In class actions such as this one, the notice must inform class members:  "the nature of the action, the definition of the class certified, the class claims, issues, or defenses, that a class

member may enter an appearance through counsel if the member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and the binding effect of a class judgment on class members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).  The class notice provides all of the requisite information, including the identity of the parties and their counsel and contains sufficient information to enable Settlement Class members to evaluate and determine whether to object to the proposed settlement. *See generally* Exhibit F, (*Class Notice*), at 7-8.  More specifically, the Notice adequately describes the case,[5] defines the class,[6] provides a basic description of the claims and defenses,[7] states that the class member may appear through counsel,[8] provides a method for exclusion and asks that such material be mailed by December 15, 2008,[9] and completely explains the binding effect of the of the class settlement.[10]  The Notice also informs Settlement Class members how to obtain additional information, including obtaining a copy of the complete Settlement Agreement if they have additional questions. *Id*. at 9 ¶26.  Accordingly, the form of the Class Notice, as approved by the Court on May 16, 2007, sufficiently appraised class members of the implications of acting upon or ignoring the Notice.

> 2.    **Manner of Distribution of Class Notice.**

Class members who can be identified through reasonable effort must be provided individual notice. *See* FED. R. CIV. P. 23(c)(2).  ANICO has provided notice to persons identified in the procedures set forth in the Settlement Agreement and accomplished as set forth above.  Exhibit E, (*Delgado Affidavit*), at 2.  In sum, ANICO, with input from ANICO's dealers/agents/producers, the loan assignees, and Accurint, a national personal information

---

[5] *Id*. at 3, ¶2.
[6] *Id*. at 4, ¶6.
[7] *Id*. at 3, ¶2; *Id*.at p 4, ¶4.
[8] *Id*. at 8, ¶22.
[9] *Id*. at 6, ¶14.  Notably, ANICO staff was instructed to notify callers that they should mail any response to the class notice, and has considered any opt out requests or objections mailed, by December 31, 2008.
[10] *Id*. at 6, ¶13; *Id*. at 7, ¶15; *Id*. at 9, ¶24.

database, identified members of the Settlement Class and provided them with individual notice of their rights under the Settlement Agreement.  All original notices to the Class Members were mailed by November 29, 2008 by First Class Mail and explicitly direct action on the notice no later than December 15, 2008. *See Id.*; Exhibit F, (*Class Notice*) at 6, ¶14.  ANICO has received and processed only nine (9) requests to opt out of the settlement class and has not received a single objection by letter. Exhibit E, (*Delgado Affidavit*), at 2.  As of January 5, 2009, ANICO also received 15,913 returned letters. *Id*. ANICO rechecked and re-mailed 3,459 of these letters because the return provided a forwarding address. *Id*.  ANICO also received 137 letters returned because the person was "temporarily away" from their mailing address. *Id*.  ANICO continued to process potential opt outs, objections and exceptions through December 31, 2008. *Id*.  The class notice timely mailed to the Class Members provides them required information related to the Class Settlement. *See generally*, **Exhibit F**, (*Class Notice*).

## IV. CONCLUSION

Based on the foregoing, the parties respectfully request that their joint motion be granted and that this Court issue an Order of its (i) final certification of a settlement class, (ii) final approval of a class settlement, (iii) a permanent injunction enjoining claims settled herein against American National Insurance Company by any Class Members; and (iv) final dismissal of this Case against American National Insurance Company with prejudice.

Respectfully submitted,

BUTLER, WOOTEN & FRYHOFER, LLP
/s/Joel O. Wooten_____
James E. Butler, Jr.
Georgia Bar No. 099625
Joel O. Wooten
Georgia Bar No. 776350
105 Thirteenth Street (31901)
Columbus, GA 31902
Telephone:  706-322-1990
Fax:  706-323-2962

PHILIPS-BRANCH
Ben B. Philips
Georgia Bar No. 575550
P.O. Box 2808
Columbus, GA 31902
Telephone:  706-323-6461

CHARLES A. GOWER, P.C.
Charles A. Gower
Georgia Bar No. 303500
C. Austin Gower, Jr.
Georgia Bar No. 303528
Teresa T. Abell
Georgia Bar No. 000383
P.O. Box 5509
Columbus, GA 31906

OATES & COURVILLE
Samuel W. Oates, Jr.
Georgia Bar No. 548250
P.O. Box 20
Columbus, GA 31902
Telephone:  706-327-8000

HATCHER, STUBBS, LAND,
HOLLIS & ROTHSCHILD, LLP
William B. Hardegree
Gregory S. Ellington
Georgia Bar No. 246863
P.O. Box 2707
Columbus, GA 31902
Telephone:  706-322-7747

RATLIFF LAW FIRM, P.L.L.C.
Shannon H. Ratliff
Texas Bar No. 16573000
Lisa A. Paulson
Texas Bar No. 00784732
600 Congress Avenue, Suite 3100
Austin, Texas 78701
Telephone: 512-493-9600

**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**

,     /s/Andrew J. Mytelka
Andrew J. Mytelka
Greer, Herz & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
409-797-3200

*Pro Hac Vice*

Eric Kirkpatrick
Greer, Herz & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
409-797-3200

*Pro Hac Vice*

Richard Y. Bradley
Bradley & Hatcher LLP
3311 W. 11th St.
Columbus, Georgia 31902

**ATTORNEYS FOR DEFENDANT
AMERICAN NATIONAL INSURANCE
COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served upon the following parties via electronic notification on this 7th day of January, 2009:

/s/ Joel O. Wooten

Austin Tighe
Vic Feazell
FEAZELL & TIGHE, L.L.P.
6300 Bridgepoint Parkway
Bridgepoint 2, Suite 220
Austin, Texas  78730

**Attorneys for Plaintiff**
**Douglas Boren**

James E. Butler, Jr.
Joel O. Wooten
BUTLER, WOOTEN & FRYHOFER, LLP
105 Thirteenth Street
Columbus, Georgia  31902

Samuel W. Oates
OATES & COURVILLE
P.O. Box 20
Columbus, Georgia  31902

Ben B. Philips
PHILIPS-BRANCH
P.O. Box 2808
Columbus, Georgia  31902

Charles A. Gower
C. Austin Gower, Jr.
Teresa T. Abell
CHARLES A. GOWER, P.C.
P.O. Box 5509
Columbus, Georgia  31902

William B. Hardegree
Gregory S. Ellington
HATCHER, STUBBS, LAND,
HOLLIS & ROTHSCHILD, LLP
P.O. Box 2707
Columbus, Georgia  31902

Shannon H. Ratliff
Lisa A. Paulson
RATLIFF LAW FIRM, P.L.L.C.
600 Congress Avenue, Suite 3100
Austin, Texas  78701

**Attorneys for Plaintiff**
**Paul Perkins**

- 21 -